**UNITED STATES of America, Appellee,**

v.

**Eddie David COX, Appellant.**

**No. 90–1386.**

United States Court of Appeals, Eighth Circuit.

Submitted June 10, 1991.

Decided Aug. 22, 1991.

As Corrected Oct. 4, 1991.

Daniel O. Herrington, argued (Willard B. Bunch, on the brief), Kansas City, Mo., for appellant.

Michael J. Dittoe, argued (Jean Paul Bradshaw II and Michael J. Dittoe, on the brief), Kansas City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge and BEAM, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Eddie David Cox appeals his convictions on twelve separate counts of drug trafficking and related offenses. He disputes: (1) the validity of a search of his vehicle; (2) the sufficiency of the evidence supporting his convictions; (3) the nondisclosure of a witness cooperation agreement; and (4)

the district court's imposition of a $22,000 fine at sentencing. We reverse Cox's conviction for conspiracy to distribute cocaine and vacate the fine imposed thereon, but affirm his convictions and sentence in all other respects.

## I. BACKGROUND

In July 1989, an anonymous citizen reported to the police department in Kansas City, Missouri, that an armed individual had brandished a weapon at the citizen and his daughter.[1] The citizen described the suspect's vehicle as a maroon Lincoln Continental, license plate number LLN 135, which had stopped at the corner of 36th and Walnut.

The police dispatcher contacted two patrol officers and told them to investigate a complaint about an armed individual driving a vehicle of the above description at the above location. When the officers arrived at the intersection, they found Cox standing next to a red Ford LTD bearing the above license number. His vehicle had a flat tire. The driver's side front door hung partly ajar.

The first officer on the scene frisked Cox, but found no weapons. The second officer to arrive went directly to the vehicle, opened the front door and searched under the driver's seat. He found a gun, handcuffs and police scanner. This prompted further inquiry, during which Cox claimed to be an undercover DEA agent. He produced government identification that appeared authentic.

As Cox showed signs of intoxication, the officers ticketed him for drunk driving. They then released him, and returned his weapon, believing Cox to be a federal officer.

In August 1989, Cox and an unidentified black male entered the home of Manuel Perez, holding themselves out as FBI agents. Cox demanded a kilogram of cocaine. When no kilogram was forthcoming, Cox searched the premises while the

accomplice guarded the door. As a result of the search, Cox "confiscated" some $6,900 in cash, three ounces of cocaine and a revolver. Cox directed the operation and appeared to be in charge.

Cox returned to Perez's residence three more times. On each occasion, Cox presented himself as a federal agent. On one occasion, Cox, accompanied by an unknown white male, took binoculars, a camera and a firearm. On another occasion, Cox left without incident. On the last occasion, Cox, accompanied by a black male, physically searched Perez but took nothing.

In September 1990, Cox approached a private security guard outside a bar. Cox identified himself as a DEA agent and inquired about the guard's knowledge of local drug activity. He then left.

In a twelve-count indictment, the Government charged Cox with conspiracy to distribute cocaine (one count), possession with intent to distribute cocaine (one count), receiving a firearm as a convicted felon (two counts), interference with interstate commerce by threats of violence (Hobbs Act violations) (two counts), and impersonation of a federal officer (six counts). The jury returned convictions on all counts. The court imposed sentences (all concurrent) of life imprisonment on the conspiracy and firearms counts; thirty years on the possession with intent to distribute count; twenty years each on the Hobbs Act counts; and three years each on the impersonation counts.

This appeal followed.

## II. DISCUSSION

### A. *Search of Vehicle*

Cox first argues that the evidence discovered during the July 1989 drunk driving incident should have been suppressed because the police lacked justification for searching his vehicle. We disagree.

An anonymous tip corroborated by independent police work can carry suffi-

---

1. The record remains silent as to whether the citizen provided his name while making the initial complaint. Because the defense disputes this point, we assume for the purposes of analy-
sis that no such identification occurred even though the citizen ultimately appeared at the scene of arrest and testified at trial.

cient indicia of reliability to provide reasonable suspicion to make an investigatory stop. *Alabama v. White*, —— U.S. ——, 110 S.Ct. 2412, 2415–17, 110 L.Ed.2d 301 (1990). In this case, a citizen eyewitness reported an armed person driving a certain vehicle in a certain location. The police found a vehicle matching the caller's description at the specified location. To be sure, the corroboration of a few readily obtainable details from an unknown caller might not justify a full-blown investigative stop of a driver in a moving vehicle. *Id.* 110 S.Ct. at 2417. Here, however, the stop caused a minimal intrusion into privacy because Cox was already stopped and standing outside his vehicle. Thus, under the circumstances, we think the police were justified in approaching Cox to further investigate the complaint.

Once engaged in a lawful investigatory stop, the officers were entitled to conduct a protective search of the surrounding area for weapons, given a reasonable belief that Cox posed a danger. *See Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3480–81, 77 L.Ed.2d 1201 (1983). The very nature of the complaint gave the officers reason to suspect the presence of weapons. Moreover, the officers found Cox standing on the passenger side of the vehicle near an unlatched door. Thus, the officers' protective search for weapons was reasonable under the circumstances.

## B. Sufficiency of the Evidence

Much of Cox's appeal focuses on the sufficiency of the evidence supporting the jury verdict. Well-established legal principles govern our review of challenges to a jury's verdict. We will uphold a conviction if, taking the evidence most favorable to the Government, a reasonable jury could have found guilt beyond a reasonable doubt. *E.g., United States v. Wainright*, 921 F.2d 833, 835 (8th Cir.1990).

### 1. Drug Counts

With respect to his drug convictions, Cox contends that the Government failed to establish the substance taken from the Perez residence as cocaine. He also contends that the Government failed to establish his intent to distribute the alleged cocaine, or that a conspiracy existed for that purpose.

As to substance identification, Cox relies heavily on the fact that no one from Perez's apartment personally used or tested the taken substance. We nonetheless believe that the jury could infer that Cox acquired cocaine. Most significantly, Cox demanded cocaine from a known dealer, received the substance in question, and later came back demanding more cocaine.

We also think that the jury could infer Cox's intent to distribute the taken substance. On several occasions, Cox went to the residence of a known drug dealer in search of drugs and drug paraphernalia. On at least one occasion, Cox demanded a large quantity of cocaine, inconsistent with personal use. Cox also made sizeable cash deposits in his bank account after this incident. Thus, the evidence, viewed most favorably to the Government, would permit a reasonable jury to return a guilty verdict on this count.

We cannot reach the same conclusion with respect to Cox's conspiracy conviction, however. A conspiracy conviction requires a showing that the alleged individuals joined together to further an agreed-to criminal purpose: here, distribution of cocaine. *See United States v. North*, 900 F.2d 131, 133 (8th Cir.1990); *United States v. Kimmons*, 917 F.2d 1011, 1016–17 (7th Cir.1990). We see no evidence of group knowledge or agreement about plans for disposal of the cocaine at issue. *See United States v. Manbeck*, 744 F.2d 360, 390–91 & n. 42 (4th Cir.1984) (ship crew members who helped import drugs could not be convicted of conspiracy to distribute absent evidence showing agreement, knowledge or stake in plans for drug distribution), *cert. denied*, 469 U.S. 1217, 105 S.Ct. 1197, 84 L.Ed.2d 342 (1985). In a word, the Government's evidence leaves us at a loss to ex-

plain why various unnamed individuals accompanied Cox.

We aptly heed the Supreme Court's caution that " 'charges of conspiracy are not to be made out by piling inference upon inference.' " *Ingram v. United States,* 360 U.S. 672, 680, 79 S.Ct. 1314, 1320, 3 L.Ed.2d 1503 (1959) (quoting *Direct Sales Co. v. United States,* 319 U.S. 703, 711, 63 S.Ct. 1265, 1269, 87 L.Ed. 1674 (1943)). Without some evidence that the accompanying individuals agreed to take cocaine for distributive purposes, we do not see how a rational trier of fact could find beyond a reasonable doubt that a conspiracy existed for that purpose. Accordingly, Cox's conviction for conspiracy to distribute cocaine must be reversed.

### 2. Felon In Receipt Counts

■ Cox next asserts that the Government's evidence fails to establish the interstate nexus for his firearm convictions beyond a reasonable doubt. Essentially, Cox posits that the Government must put the firearms in question into evidence. We disagree.

■ To prove an interstate nexus, the government must show that the firearm moved in or affected interstate commerce. 18 U.S.C.A. § 922(g) (West Supp.1991). The government need not produce the firearm in question to satisfy this element; proof that the firearm was manufactured outside the state of possession will suffice. *United States v. Gregg,* 803 F.2d 568, 571 (10th Cir.1986), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987).

In the instant case, both eyewitness and expert testimony substantiated the interstate commerce element. The testimony of Government witnesses established that the weapons in question carried the rampant horse insignia of Colt Industries. The testimony further established that Colt does not manufacture weapons in Missouri. This evidence satisfies the interstate nexus requirement of section 922(g).

### 3. Hobbs Act Counts

■ Cox contends, among other things, that his robberies of the Perez residence lacked the requisite interstate nexus for a violation of the Hobbs Act, 18 U.S.C. § 1951 (1988). Based on the evidence at trial, we conclude that the Government sufficiently proved the interstate character of Perez's drug trade. *Cf. United States v. French,* 628 F.2d 1069, 1077–78 (8th Cir.) (extortion from business regularly and substantially involved in interstate commerce supplies requisite nexus), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980).

### C. *Disclosure*

■ Cox also contends that the Government failed to disclose an alleged immunity agreement with Perez in violation of *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963). However, our review leaves us confident that, in the unlikely event that such an agreement existed, its disclosure would not have affected the outcome of Cox's trial. *See United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 3383–84, 87 L.Ed.2d 481 (1985).

### III. CONCLUSION

We reverse Cox's conviction for conspiracy to distribute cocaine and vacate the fine imposed thereon, but affirm his convictions and sentence in all other respects.