**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Lisa Michelle GEORGE, Defendant–Appellee.**

No. 95SA391.

Supreme Court of Colorado, En Banc.

April 15, 1996.

---

Robert R. Gallagher, Jr., District Attorney, Eighteenth Judicial District, James C. Sell, Chief Deputy District Attorney, Englewood, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Kimberly Karn, Deputy State Public Defender, Englewood, for Defendant–Appellee.

Justice KIRSHBAUM delivered the Opinion of the Court.

In this interlocutory appeal filed pursuant to C.A.R. 3 and 4.1, the People seek review of a ruling by the Douglas County District Court suppressing evidence seized by two Castle Rock, Colorado, police officers after they stopped a van driven by the defendant, Lisa Michelle George. The trial court determined that, at the time they stopped the van, the officers did not possess sufficient specific and articulable facts to support a reasonable suspicion that criminal activity had occurred,

was occurring, or was about to occur. We affirm the trial court's ruling.

## I

On December 17, 1994, at approximately 11:45 p.m., an anonymous person telephoned the Castle Rock Police Department to report a possible altercation "between two vehicles" in the parking lot of a Castle Rock tire store located one-half block from the police station. The caller stated that one of the vehicles had followed the other one into the parking lot and that one of the vehicles was a van. The caller did not report that any altercation had occurred or was occurring.

Officer Patricia Lisk, accompanied by Officer Clifford Archambo, drove a patrol car to the parking lot. When they arrived at the scene, approximately thirty seconds to one minute after the telephone call was received, they observed a van moving toward them. Officer Lisk testified that she thought the van was trying to leave the parking lot and that she saw "nothing suspicious about that." She also stated that she had the impression that the other vehicle reportedly at the scene had departed.

When Officer Lisk blocked the exit and activated the patrol car's overhead lights, the driver, George, stopped the van. Officer Archambo initially spoke to George and told Officer Lisk that an odor of alcoholic beverage was noticeable on George's breath. Officer Lisk then approached George, observed that George's eyes were watery and bloodshot, and directed George to perform certain preliminary roadside tests. When George refused to take a requested preliminary breath test and became uncooperative, Officer Lisk arrested George for driving under the influence of alcohol, placed her in the patrol car, and returned to the van to obtain the vehicle registration.

As she approached the van, Officer Lisk was informed by another officer that a small envelope was located on a step just inside the driver's side of the van. Officer Lisk opened the envelope and discovered a white powdery substance later determined to be methamphetamine. George was ultimately charged

with the offenses of unlawful possession of a controlled substance pursuant to sections 18-18-204 and -405(1)(a), (2)(a)(I), 8B C.R.S. (1995 Supp.); driving under the influence of alcohol pursuant to section 42-4-1202(1)(a), 17 C.R.S. (1986);[1] and resisting arrest pursuant to section 18-8-103(1)(a), 8B C.R.S. (1986).

Prior to trial, George filed a motion to suppress all evidence obtained as a result of the stop of her van, arguing that the investigating officers did not have a reasonable and articulable basis in fact to believe that she was engaged in any criminal activity at the time she stopped the vehicle. The trial court agreed and granted the motion.

## II

The People argue that the trial court erred in concluding that Officers Lisk and Archambo had no reasonable suspicion to justify their stop of George's van. We disagree.

A police official may stop and question a driver of a motor vehicle if the official has a reasonable suspicion that a person has committed, is committing, or is about to commit a crime; if the purpose of the detention is reasonable; and if the character and scope of the detention is reasonable when considered in light of its purpose. *People v. Weston,* 869 P.2d 1293, 1296 (Colo.1994); *Stone v. People,* 174 Colo. 504, 509, 485 P.2d 495, 497 (1971). A police official's suspicion is "reasonable" when it has an " 'articulable and specific basis in fact.' " *People v. Garcia,* 789 P.2d 190, 192 (Colo.1990) (quoting *People v. Savage,* 698 P.2d 1330, 1334 (Colo.1985)). The relevant inquiry is whether the "specific and articulable facts known to the officer" as well as the "rational inferences from these facts" would support a reasonable suspicion of criminal activity so as "justify intrusion into the defendant's personal security." *Garcia,* 789 P.2d at 192.

The information known to Officers Lisk and Archambo when they stopped George's van consisted entirely of information supplied by an anonymous telephone caller. Because information supplied by an

[1]. This section has been relocated to § 42-4-1301(1)(a), 17 C.R.S. (1995 Supp.).

anonymous source may often be unreliable, that information may warrant an investigatory stop only if it is verified by sufficient independent corroborating evidence of criminal activity. *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990); *Garcia*, 789 P.2d at 192. When a tipster's information has been sufficiently corroborated, that information together with all other facts known to the investigating officer must be evaluated as a whole to determine whether sufficient reasonable suspicion existed to justify the investigatory stop. *People v. Contreras*, 780 P.2d 552, 555 (Colo. 1989).

The trial court applied these standards in determining that at the time they stopped the van driven by George Officers Lisk and Archambo lacked the reasonable suspicion of past, present, or future criminal conduct required to justify an investigatory stop of a moving motor vehicle. The trial court found as matters of historical fact that when the officers initially entered the parking lot they knew only that a van and another vehicle had lawfully entered the lot and that the caller had expressed concern about a possible altercation "between [the] two vehicles." They noticed nothing suspicious about the way the van was being driven, had no information regarding its color or license plate, and did not see any other occupied vehicle. The only fact they corroborated was the fact that a van had lawfully entered the parking lot. Thus at 11:46 p.m. on December 17, 1994, the officers knew no specific and articulable facts to support a suspicion that the occupants of the van had engaged in, were engaging in, or were about to engage in criminal conduct.

The trial court's conclusion is supported by our decision in *People v. Garcia*, 789 P.2d 190 (Colo.1990), wherein we affirmed a trial court's order suppressing seized evidence. In that case the anonymous informant told police officials the defendant's name, that the defendant would be leaving an apartment located "in the 300 block of Chipeta" at approximately 1:00 p.m. that day, that the defendant would drive away from that location in a vehicle parked in a nearby alley, and that the vehicle was a brown Toyota or sta-

tion wagon. The tipster also reported the license plate number of the vehicle and stated that approximately half an ounce of cocaine would be located under the hood of the car.

Police officials proceeded to the 300 block of Chipeta and observed a brown station wagon in a nearby alley displaying license plates matching the numbers provided by the informant. At approximately 1:10 p.m., the officers observed the defendant and a woman enter the vehicle and drive down the alley. The officers intercepted the defendant's vehicle, questioned the defendant, requested and received permission to search the car, and found approximately one-half ounce of cocaine under the hood of the car.

We concluded, as had the trial court, that the officers lacked an articulable and specific basis in fact for suspecting criminal conduct. We first noted that the information provided by the informant was "not very specific or complete" because the informant did not provide an exact address, a description of the defendant, or the destination of the defendant. *Garcia*, 789 P.2d at 192–93. Additionally, we observed that the informant had not told police officials how long the cocaine had been in the vehicle or how he knew of its presence in the vehicle and that the "credibility of the informant and the basis of the informant's knowledge were unknown." *Id.* at 193. We noted that while the description of the car parked in an alley near the 300 block of Chipeta and the statement that a person would enter that car at approximately 1:00 p.m. were corroborated by the police officials' observations, "[o]nly the corroboration of one instance of commonplace activity suggested that the tip was reliable." *Id.* While we recognized that in some circumstances "verification of seemingly innocent details contained in a tip from an anonymous informant can be sufficient to supply the requisite corroboration," we held that under the totality of the circumstances the officers "lacked an articulable and specific basis in fact for suspecting that criminal activity was afoot." *Id.* at 192. As in *Garcia*, the only fact verified here was the commonplace fact that a van had entered the parking lot.

Our conclusion in this case that the officers lacked a specific and articulable basis in fact to reasonably suspect past, present, or future criminal conduct when they stopped the van driven by George is also supported by *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). In *White*, the United States Supreme Court carefully reiterated the specificity of information that must be provided by an anonymous informant and the degree of corroboration of such information necessary to justify reliance upon an anonymous tip. In that case, a police official received a telephone call from an anonymous caller who stated that the defendant, Vanessa White, would depart from a particular apartment building at a particular time in a brown Plymouth station wagon with a broken taillight; that White would proceed to a certain motel; and that she would be transporting a brown briefcase containing approximately one ounce of cocaine. *Id.* at 327, 110 S.Ct. at 2415.

Two police officers were dispatched to the apartment building described by the informant. Upon their arrival, they observed a parked brown Plymouth station wagon with a broken taillight. They also observed White depart empty-handed from the building, enter the station wagon, and drive away. The officers followed the vehicle for nearly four miles along the most direct route to the motel, which route involved several turns. The officers stopped the vehicle just short of the motel and obtained White's permission to search for cocaine. A search of the vehicle revealed a brown briefcase containing marijuana. *Id.*

Noting that the factual circumstances presented a "close case," the Court determined that the anonymous tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop. *Id.* at 326–27, 110 S.Ct. at 2414–15. The court noted that the fact that the officers found a car precisely matching the tipster's description was an easily obtainable fact of a condition presumably existing at the time of the call and in itself providing no guarantee of the reliability of the tipster's information. *Id.* at 332, 110 S.Ct. at 2417 (citing *Illinois v.*

*Gates,* 462 U.S. 213, 245, 103 S.Ct. 2317, 2335, 76 L.Ed.2d 527 (1983)). The court emphasized that the tipster's ability to predict White's future behavior included details not readily ascertainable by the general public that indicated the tipster's "special familiarity" with White's affairs. *Id.* at 332, , 110 S.Ct. at 2417. The court stated that "[w]hen significant aspects of the caller's predictions were verified, there was reason to believe not only that the caller was honest but also … well informed, at least well enough to justify the stop." *Id.*

■ As *Garcia* and *White* illustrate, the information supplied by an anonymous tipster must be sufficiently corroborated to supply the degree of reliability precisely absent in many circumstances of anonymous reporting of asserted criminal conduct. Both the content and the reliability of information known to police—the quality and the quantity of such information—must be considered in examining the totality of the circumstances to determine whether there was an articulable and specific basis in fact to support a reasonable suspicion of criminal conduct. *White,* 496 U.S. at 330, 110 S.Ct. at 2416.

In the instant case, the anonymous informant reported only that a van and another vehicle had entered a parking lot and that an altercation might possibly occur. No aspect of that report suggested that the informant had any personal information about the occupants of the vehicles. The informant supplied no facts to support the reported concern about what might subsequently occur. The corroborated fact of the lawful presence of a van in the parking lot is the corroboration of a fact presumably known or knowable by everyone—a corroboration that lacks the quality and quantity of detail sufficient to establish the reliability of the informant's tip. *White,* 496 U.S. at 332, 110 S.Ct. at 2417; *Garcia,* 789 P.2d at 192.

Our conclusion in this case is consistent with our decision in *People v. Melgosa,* 753 P.2d 221 (Colo.1988). Initially, it must be observed that the dispositive issue in this case—the question of sufficient corroboration of an anonymous caller's information—was not addressed in *Melgosa.* Furthermore, while the factual circumstances of that case

supported the conclusion that the investigating officers had a reasonable suspicion to stop a moving vehicle, those factual circumstances differ markedly from the historic facts found by the trial court here. In *Melgosa*, a police dispatcher aired a report that a blue van was involved in an ongoing possible "burglary" of an automobile at a specific location. *Id.* at 223. There was no indication that the informant was anonymous. Within sixty seconds a police officer arrived at the scene and observed a blue automobile pulling away from the area where the alleged crime had reportedly been committed. The difference between the factual matrices of *Melgosa* and of the present case are stark. The police dispatch aired in *Melgosa* a particular color of a vehicle and indicated that the vehicle was at that moment possibly being used in furtherance of criminal conduct. In this case the dispatch simply indicated that a van was lawfully at a location and that the caller was concerned that an "altercation" might develop.

The trial court applied the standards we developed in *Garcia* to the historic facts it found and concluded that when they stopped George's van the officers lacked an articulable and specific basis in fact to support a reasonable suspicion that criminal conduct involving the van had occurred, was occurring, or was about to occur. Under the totality of the circumstances, *see People v. Bell*, 698 P.2d 269, 272 (Colo.1985), we agree with the trial court's conclusion.

### III

For the foregoing reasons, we affirm the ruling of the trial court.

LOHR, J., concurs and specially concurs and ERICKSON, J., joins in the concurrence and the special concurrence.

VOLLACK, C.J., dissents and MULLARKEY and KOURLIS, JJ., join in the dissent.

Justice LOHR concurring:

I concur in the opinion of the majority of this court, which affirms a ruling of the district court suppressing evidence on the basis that it was acquired as a result of a constitutionally impermissible stop of a van driven by the defendant, Lisa George. As the majority opinion explains, the stop violated the defendant's constitutional protections against unreasonable seizures because "at the time they stopped the van the officers did not possess sufficient specific and articulable facts to support a reasonable suspicion that criminal activity had occurred, was occurring, or was about to occur." Maj. op. at 368; *see* U.S. Const. amend IV (proscribing unreasonable searches and seizures); Colo. Const. art. II, § 7 (same). I write separately in light of Chief Justice Vollack's dissenting opinion to explain why in my view, *People v. Melgosa*, 753 P.2d 221 (Colo.1988), provides no assistance in resolving this case.

### I.

The central issue in the present case is whether the quantity and quality of information supplied by an anonymous informant, taken together with the extent to which that information was corroborated by the police officers' observations, supported the constitutionally necessary reasonable suspicion to believe that criminal activity had occurred, was occurring, or was about to occur. The standards for evaluating whether a tip by an anonymous informant, as supplemented by corroboration of some of the information in that tip, is sufficient to create reasonable suspicion were set forth in our decision in *People v. Garcia*, 789 P.2d 190 (Colo.1990), and, for Fourth Amendment purposes, shortly thereafter were extensively developed in Mr. Justice White's opinion for the majority of the United States Supreme Court in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). The majority opinion in the present case properly and correctly applies those standards. Maj. op. at 369–71.

*People v. Melgosa*, 753 P.2d 221, in which we reversed an order suppressing evidence obtained as a result of an investigatory stop, was decided in 1988, prior to both *Garcia* and *White*. It involved a police dispatch report that a possible "burglary" of a motor vehicle was in progress at a specified location and that a blue van was possibly involved in the

break-in.[1] There is no suggestion in *Melgosa* that the source of the information related in the police dispatch report was an anonymous tip or that such information was otherwise of questionable reliability. Thus, the standards for evaluating reasonable suspicion based on information supplied by an anonymous tipster were not at issue in *Melgosa.* In *Garcia,* 789 P.2d 190, decided by this court two years after *Melgosa,* we specifically addressed the standards applicable when the source of the information on which the police officers rely is an anonymous tip. In *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301, decided shortly after *Garcia,* the United States Supreme Court thoroughly discussed those standards and the rationale on which they are based. *Alabama v. White* and *Garcia,* therefore, supply the appropriate standards and rationale for determining reasonable suspicion based on an anonymous tip, and our decision in *Melgosa* provides no assistance in resolving the case now before us.

## II.

For the additional reasons set forth above, I concur in the majority opinion affirming the order of the district court suppressing evidence obtained as a result of the unconstitutional stop of the defendant's van.

ERICKSON, J., joins in this concurrence.

Chief Justice VOLLACK dissenting:

The majority affirms the trial court's order suppressing evidence on the grounds that the officers did not possess sufficient specific and articulable facts to support reasonable suspicion that criminal activity had occurred, was occurring, or was about to occur. In my opinion, the record supports reasonable suspicion to justify an investigatory stop. Therefore, I dissent.

## I.

On December 17, 1994, at approximately 11:45 p.m., Officers Lisk and Archambo of the Castle Rock Police Department received a dispatch call informing them that there was a possible altercation between the occupants of a van and another vehicle in the parking lot of Willie Wilson's tire store in Castle Rock. The dispatcher informed the officers that one vehicle had pulled into the parking lot, the other had followed, and that an altercation was occurring or was about to occur. One of the officers testified at the suppression hearing that she was unaware who provided the information regarding the altercation.

The officers then proceeded in their patrol car from the Castle Rock Police Station to the parking lot of Willie Wilson's tire store. The parking lot is approximately one-half block away from the police station, and Officer Lisk estimated that it took the officers between thirty seconds and one minute to reach the parking lot. As the officers approached the lot, they saw a van in the parking lot traveling towards their patrol car. At that time, Officer Lisk observed that the van was the only occupied vehicle in the parking lot.

As the patrol car approached the van, the van stopped, and Officer Lisk activated the patrol car's overhead lights. The officers then exited the patrol car and approached the van. Officer Lisk informed the passenger of the van that the officers received a report of an altercation involving the van. The passenger responded that he had argued with some friends, who had already left the scene.

While Officer Lisk was questioning the passenger, Officer Archambo spoke with the driver of the van, the defendant, who identified herself as Lisa L'Heureux.[1] While speaking with the defendant, Officer Archambo detected the odor of an alcoholic beverage on her breath and noticed that her eyes were bloodshot and watery. Officer Archambo then asked the defendant to step out of the van and perform certain roadside

---

1. The facts in *Melgosa* are more fully set forth in the majority opinion, maj. op. at 371–72, and in Chief Justice Vollack's dissenting opinion, Vollack, Ch. J., dissenting op. at 376 and 376 n. 3.

1. The defendant later informed Officer Lisk that her legal name is currently Lisa George.

tests designed to determine whether the defendant was intoxicated. As the result of the defendant's performance on these tests, as well as the officers' observations that the defendant was intoxicated, the officers placed the defendant under arrest for driving under the influence of alcohol.

Officer Lisk then returned to the van to look for the vehicle registration. As Officer Lisk approached the van, another officer on the scene notified her that there was a small envelope lying on a step on the driver's side of the van. Upon opening the envelope, Officer Lisk discovered a white powdery substance inside which later proved to be methamphetamine. The officers then transported the defendant to the Douglas County Detention Facility.

The People charged the defendant with unlawful possession of a controlled substance, driving under the influence of alcohol, and resisting arrest. The defendant then moved the trial court to suppress all statements and evidence obtained as a result of the investigatory stop of her van, alleging that the stop ran afoul of the United States and Colorado Constitutions. The trial court ruled for the defendant, and entered the requested suppression order.

## II.

The majority holds that the trial court correctly concluded that Officers Lisk and Archambo lacked reasonable suspicion to justify their investigatory stop of the defendant's van. Maj. op. at 369. I disagree.

A police officer, without probable cause to effect an arrest, may conduct an investigatory stop provided the following requirements are satisfied: (1) the officer must have an articulable and specific basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to take place; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *People v. Weston*, 869 P.2d 1293, 1296 (Colo.1994); *Stone v. People*, 174 Colo. 504, 509, 485 P.2d 495, 497 (1971) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In this case, we are concerned with the first of these requirements. We have restated this element as requiring that the officer have a reasonable suspicion that an individual is engaged in, has engaged in, or is about to engage in criminal conduct. *People v. Garcia*, 789 P.2d 190, 192 (Colo.1990). We have further elaborated:

> The question is "whether there were specific and articulable facts known to the officer which taken together with rational inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security."

*Id.* at 192 (citing *People v. Thomas*, 660 P.2d 1272, 1274 (Colo.1983)).

The United States Supreme Court has clarified that the quantum of proof required to effect an investigatory stop is "obviously less demanding than that for probable cause," stating that the Fourth Amendment requires only "'some minimal level of objective justification' for making the stop." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984)). The *Sokolow* Court further stated that the "level of suspicion [required] is considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* Additionally, in determining the validity of the stop, the court must consider the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983); *People v. Sosbe*, 789 P.2d 1113, 1115 (Colo. 1990).

Information provided by an anonymous informant may give rise to the requisite reasonable suspicion if that information, together with corroborating observations made by the officer, provides a specific and articulable basis in fact to suspect that an individual is involved in criminal activity. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990); *Garcia*, 789 P.2d at 192. In determining whether an anonymous tip gave rise to reasonable suspicion sufficient to justify an investigatory stop, the *White* court stated:

Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

*White*, 496 U.S. at 330, 110 S.Ct. at 2416.

Moreover, under the proper circumstances, the verification of seemingly innocent details provided by an anonymous informant may be sufficient to provide the necessary corroboration. *Garcia*, 789 P.2d at 192. It is not necessary that the police corroborate details which, by themselves, raise the suspicion of illegal activity. *People v. Turcotte–Schaeffer*, 843 P.2d 658, 661 (Colo.1993).

In the instant case, the police officers had the necessary reasonable suspicion to support the investigatory stop of the defendant's van. The officers received a report that there was a possible altercation or disturbance involving the occupants of a van in the parking lot of Willie Wilson's tire store. They arrived at the parking lot almost immediately to find that the only occupied vehicle in the parking lot was a van which was proceeding directly towards their patrol car. This provided the officers the requisite reasonable suspicion to engage in an investigatory stop of the van.

Although the information providing the reasonable suspicion was furnished to the officers by an anonymous informant, the officer's sighting of the van in the location reported by the informant verified a "seemingly innocent detail" supplied by the informant, and thus afforded the essential corroboration to support the officer's reasonable suspicion of potential criminal activity. See *Garcia*, 789 P.2d at 192.

The police were informed that a van was involved in an altercation at a specific location near midnight in Castle Rock. The police immediately proceeded to that location and arrived there within one minute of the dispatch report. Upon arriving at that location, the parking lot of a tire store, the police observed that a van was the only occupied vehicle in the parking lot. Viewed under the totality of the circumstances, these details provide the necessary corroboration to support a finding of reasonable suspicion as required by *Garcia* and *White*.[2] Because the officers had a reasonable suspicion that criminal activity was taking place, was about to take place, or had already taken place, the investigatory stop of the defendant's van was valid under both the Colorado and United States Constitutions.

---

**2.** The holding of the United States Court of Appeals for the Eighth Circuit in *United States v. Cox*, 942 F.2d 1282 (8th Cir.1991), supports my view that the anonymous tip in the instant case was sufficient to provide reasonable suspicion to support an investigatory stop. In *Cox*, an anonymous citizen informed the police that an armed individual was brandishing a weapon. The only other information given by the citizen was that the individual was at the corner of 36th and Walnut in a maroon Lincoln Continental with the license plate number LLN 135. The police proceeded to that location, where they found the defendant standing next to a red Ford LTD bearing the above license plate number. The police then engaged in an investigatory stop of the defendant which led to his search and arrest.

The court of appeals upheld the stop, holding that the officers' corroboration of the anonymous tip, albeit partially inaccurate, provided the tip with sufficient indicia of reliability to provide reasonable suspicion to support the investigatory stop. In so holding, the court stated:

> In this case, a citizen eyewitness reported an armed person driving a certain vehicle in a certain location. The police found a vehicle matching the caller's description at the specified location.... [U]nder the circumstances, we think the police were justified in approaching [the defendant] to further investigate the complaint.

*Id.* at 1285.

Thus, in *Cox*, the court of appeals upheld the stop despite the fact that the detailed information provided by the anonymous caller was largely incorrect. In fact, the dispositive fact for the court in that case was that "[t]he police found a vehicle matching the callers description at the specified location." *Id.* This mirrors the situation in the instant case. Immediately after the police received the report that a van was involved in an altercation in the parking lot down the street from the police station, the police arrived at the specified location to find a vehicle matching the caller's description. The ruling in *Cox* therefore supports upholding the investigatory stop in the case at bar.

This holding is supported by our decision in *People v. Melgosa*, 753 P.2d 221 (Colo. 1988), where we reached the same conclusion on similar facts.[3] In *Melgosa*, a police officer received a report from his dispatcher that "a blue van was possibly involved in a break-in." *Id.* at 223. The report was unclear as to the details of the possible break-in. The officer proceeded to the location indicated by the dispatcher, where he observed a parked blue automobile containing two occupants. As the officer approached the automobile, the automobile pulled away from the curb. Acting on his belief that this automobile may have been the "blue van" reported by the dispatcher, the officer turned on his overhead lights and pulled the vehicle over. The officer then searched the vehicle and the driver of the vehicle, discovered burglary tools and goods the officer believed to be stolen, and arrested the driver.

In evaluating the propriety of the officer's stop of the vehicle, we held that "there is no question that the investigatory stop and temporary detention of the defendants were constitutionally justified." *Id.* at 226. In so holding, we stated:

> Within a minute after hearing the 2:31 a.m. police dispatch broadcasting a possible break-in involving a blue van ..., Officer Taylor observed a blue automobile pull away from the area where the alleged crime was reported to have been committed. The officer thus had an articulable and specific basis in fact for suspecting

that the defendants had been involved in the reported break-in.

*Id.*

Our decision in *Melgosa* mandates the conclusion that the investigatory stop in the instant case was valid. As in *Melgosa*, the officer in the instant case had immediately responded to a dispatch call reporting a potential crime possessing only the knowledge that the perpetrators were driving a van. Also as in *Melgosa*, the officer in the case before us stopped the defendant although he actually witnessed no criminal activity. Our conclusion in *Melgosa*, that such circumstances provide an articulable and specific basis to support an investigatory stop, is thus applicable to the case at bar. Accordingly, I would reverse the trial court's suppression order and remand the matter to the district court for further proceedings consistent with this opinion.

I am authorized to say that Justice MULLARKEY and Justice KOURLIS join in this dissent.

---

**3.** The majority correctly notes that in *Melgosa*, we did not address the issue of corroboration of an anonymous tip. Maj. op. at 371. The majority then attempts to distinguish *Melgosa* from the instant case by pointing out that in *Melgosa* there was no indication that the informant was anonymous. *Id.* A careful comparison of the facts of *Melgosa* to the record in the instant case reveals striking similarities.

In *Melgosa*, the facts state that "a dispatcher for the Colorado Springs Police Department aired over a police radio channel the report of a possible 'burglary' of a motor vehicle in progress." *Melgosa*, 753 P.2d at 223. In the instant case, Officer Lisk testified at the suppression hearing that "Officer Archambo and I were dispatched to the parking lot of Willie Wilson's tire store.... We got a report of some type of altercation between the two vehicles." Thus, in both

cases, the officers were provided information from a dispatcher with no elaboration as to the identity of the person who initially provided the information.

While there is no indication in *Melgosa* that the informant was anonymous, there is also no indication of the informant's identity, and certainly no indication that the transmission from the dispatcher informed the officers of the informant's identity. The court in *Melgosa* may have simply assumed that the officers' subsequent corroboration of the information provided to them by the dispatcher was sufficient to lend the requisite indicia of reliability to that information and thus give rise to reasonable suspicion. The holding in *Melgosa* therefore supports my conclusion that the officers in the case at bar possessed sufficient reasonable suspicion to support their investigatory stop of the defendant's van.