**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Joseph Jason SALAZAR, Defendant–Appellee.**

**No. 98SA100.**

Supreme Court of Colorado, En Banc.

June 29, 1998.

G.F. Sandstrom, District Attorney, Tenth Judicial District, Margaret C. Vellar, Deputy District Attorney, Pueblo, for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Victor I. Reyes, Deputy State Public Defender, Pueblo, for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People appeal a suppression order entered by the Pueblo County District Court in the prosecution of Joseph Jason Salazar. The trial court found that the police officer who detained Salazar lacked a reasonable suspicion to justify the stop. Therefore, the trial court suppressed evidence seized and statements made by Salazar subsequent to the stop. We affirm the trial court's order and remand the case for further proceedings.

## I.

On August 20, 1997, Officer Phil Casias was on duty in the area of Aloha Glorya's, a bar in Pueblo, Colorado. At approximately 11:45 p.m., Casias was dispatched to Aloha Glorya's in response to a call for service. That call resulted from an anonymous telephone call to police dispatch reporting that an individual was selling cocaine at the bar. The anonymous caller described the individual as a hispanic male, age 19 to 21, wearing a black shirt, blue jeans, and a baseball cap with the letter "C" on it. The caller stated that the individual stored the cocaine in his right shoe. The caller did not provide the basis for this information.

All of the above information, except the suspect's age, was relayed to Casias by police dispatch. Upon entering the bar, Casias observed an individual who matched the de-

scription provided by the caller. The individual was sitting at a table against the back wall of the establishment. Casias approached the individual, who later identified himself as Salazar, and asked him to go outside. Salazar said nothing, but stood up and started walking toward the exit. As they were exiting the bar, an employee of the bar, as well as a patron who was identified as an off-duty Department of Corrections officer, informed Casias that Salazar had not been creating a disturbance in the bar.

Once outside, Casias and Salazar were joined by another officer. At that point, Casias informed Salazar that Salazar matched the description of someone who was allegedly selling cocaine from the bar. Casias then asked permission to conduct a search of Salazar's person, and Salazar purportedly consented to the search. A search of Salazar's right shoe revealed a plastic baggie with several folds of an unknown substance. Salazar identified the substance as chalk. The search of the shoe also produced a hand-held scale.

Because he suspected the substance within the baggie to be cocaine, Casias arrested Salazar for possession of a schedule II controlled substance. After a chemical test showed that the substance was not cocaine, Salazar was charged with possession with intent to distribute an imitation controlled substance, a class five felony. *See* § 18–18–422, 6 C.R.S. (1997).

After Salazar was bound over for trial, he filed a Motion to Suppress Evidence and Statements. In his motion, Salazar argued, inter alia, that the police lacked both reasonable suspicion to stop him and probable cause to arrest him. At a hearing on the motion on March 3, 1998, the trial court heard arguments on the issues of reasonable suspicion, probable cause, and whether Salazar's consent to a search of his person was voluntary. Although the evidence suggested that Salazar was intoxicated at the time of the search, the trial court found that Salazar's consent to the search was given knowingly, voluntarily and intelligently.

On the issue of reasonable suspicion, the trial court made the following findings regarding the information known to Casias at the time of the stop: (1) an anonymous tipster described a person who the tipster claimed was dealing cocaine, (2) the tipster did not indicate how he knew that the person was dealing cocaine, and (3) a person who matched the description given by the tipster was present in the bar. The trial court concluded that this information was an insufficient basis for suspecting that criminal activity had taken place, was in progress, or was about to occur. Therefore, the trial court found that the stop of the defendant was improper, and suppressed the evidence seized and statements made by Salazar as a result of the stop.

The prosecution filed a Motion to Reconsider, arguing that the trial court's ruling was based on the erroneous theory that an officer must observe criminal activity in order to justify an investigatory stop. The prosecution maintained that the information known to Officer Casias at the time of the stop, although indicative of innocent behavior, was sufficient to provide a reasonable suspicion of criminal activity. The trial court denied the prosecution's motion, emphasizing that "[n]ot only was there no corroboration of any possible criminal activity, but there was absolutely no evidence of the anonymous informant's basis of knowledge or his reliability."

Pursuant to C.A.R. 4.1, the prosecution appeals the trial court's order. The prosecution argues once again that Casias's stop of Salazar was justified by a reasonable suspicion of criminal activity.

## II.

■ The Fourth Amendment to the United States Constitution and Article II, Section 7 of the Colorado Constitution protect against unreasonable searches and seizures. *See Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *People v. Canton,* 951 P.2d 907, 909 (Colo. 1998). A warrantless search and seizure is unreasonable unless justified by an established exception to the Warrant Clause of the Fourth Amendment. *See Canton,* 951 P.2d at 909; *People v. H.J.,* 931 P.2d 1177, 1180 (Colo.1997). Moreover, an arrest must be

based on probable cause to believe that the person arrested has committed a crime. *See People v. Tate,* 657 P.2d 955, 958 (Colo.1983). "However, under narrowly defined circumstances, a police officer may temporarily stop a person for investigatory purposes without probable cause to support a search warrant or probable cause to arrest the person." *Canton,* 951 P.2d at 909.

■ An investigatory stop complies with the Fourth Amendment if three criteria exist. First, there must be an articulable and specific basis in fact for suspecting (i.e., a reasonable suspicion) that criminal activity has taken place, is in progress, or is about to occur. Second, the purpose of the intrusion must be reasonable. Third, the scope and character of the intrusion must be reasonably related to its purpose. *See id.; People v. D.F.,* 933 P.2d 9, 12 (Colo.1997). In this case, the prosecution appeals the trial court's conclusion that Officer Casias lacked a reasonable suspicion to justify the initial contact with Salazar. Therefore, in this appeal, we address only the existence of the first criterion for an investigatory stop.

■ Our inquiry focuses upon " 'whether there were specific and articulable facts known to the officer, which taken together with reasonable inferences from these facts, created a reasonable suspicion of criminal activity to justify the intrusion into the defendant's personal security.' " *People v. Garcia,* 789 P.2d 190, 192 (Colo.1990) (quoting *People v. Thomas,* 660 P.2d 1272, 1274 (Colo.1983)). We look to the totality of the circumstances to answer this inquiry. *See People v. D.F.,* 933 P.2d at 12.

In the instant case, the information known to Officer Casias at the time he stopped Salazar consisted entirely of information supplied by an anonymous tip and subsequent corroboration of certain details given by the tipster. Thus, the principles of our case law relating to anonymous information are relevant here. An anonymous tip, by itself, lacks sufficient indicia of reliability to establish reasonable suspicion. *See id.; Garcia,* 789 P.2d at 192. Therefore, information supplied by an anonymous source "may warrant an investigatory stop only if it is verified by sufficient independent corroborating evi-

dence of criminal activity." *People v. George,* 914 P.2d 367, 370 (Colo.1996).

■ Because the verification of seemingly innocent details contained in a tip may supply sufficient corroboration of the tip's reliability, a police officer need not observe criminal conduct to justify a limited investigatory intrusion. *See People v. D.F.,* 933 P.2d at 16. For example, where the corroboration of details given by the tipster demonstrate the tipster's ability to predict a suspect's future behavior or knowledge of details not readily ascertainable by the general public, the tipster may be presumed to have a "special familiarity" with the suspect's affairs. *See George,* 914 P.2d at 371. Thus, if significant aspects of a tipster's predictions are verified, there may be reason to believe not only that the tipster is honest but also well-informed. *See Alabama v. White,* 496 U.S. 325, 332, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

In *George,* we provided the following summary of the law regarding an anonymous tip's relevance to reasonable suspicion:

[T]he information supplied by an anonymous tipster must be sufficiently corroborated to supply the degree of reliability precisely absent in many circumstances of anonymous reporting of asserted criminal conduct. Both the content and the reliability of information known to police—the quality and the quantity of such information—must be considered in examining the totality of the circumstances to determine whether there was an articulable and specific basis in fact to support a reasonable suspicion of criminal conduct.

914 P.2d at 371. Consequently, in *George,* we affirmed the trial court's suppression order on the grounds that the police lacked such a reasonable suspicion. There, an anonymous informant reported only that a van and another vehicle had entered a parking lot and that an altercation might possibly occur. We reasoned that the police's corroboration of the presence of the van merely corroborated a fact "presumably known or knowable by everyone." *Id.* As such, the corroboration lacked sufficient detail to establish the reliability of the informant's tip. *See id.*

Similarly, in *Garcia*, we also affirmed the trial court's suppression order. *See* 789 P.2d at 193. In that case, an anonymous caller alleged that a certain car contained cocaine under the hood. The police corroborated the caller's description and location of the car, and the caller's prediction that a person would enter the car at a specified time and drive away. Because the police corroborated only a "pattern of conduct intrinsically *unsuspicious*," and because the corroborated fact was merely "one instance of commonplace activity," we held that the tip was not sufficiently reliable to establish reasonable suspicion. *Id.* at 193 (emphasis added).

■ With these principles in mind, we turn to the question of whether the information known to Officer Casias was sufficient to establish reasonable suspicion. The information given by the anonymous call consisted of a physical description of a person, including details about the person's clothing, and an allegation that the person stored cocaine in his shoe for the purpose of dealing it. No aspect of the informant's tip indicated his basis for this information. The officer corroborated that a person matching the description given by the informant was present in the location specified by the informant. This was the sum total of the information known to the officer at the time he encountered Salazar.

We conclude that this information did not provide an articulable and specific basis in fact to support a reasonable suspicion of criminal conduct. First of all, the anonymous tip did not supply detailed knowledge or predictions of the person's future behavior that were corroborated by the officer's observations. *See, e.g., White*, 496 U.S. at 332, 110 S.Ct. 2412. Secondly, the only corroborated facts were the person's presence in the bar and his physical appearance. These facts were "presumably known or knowable by everyone," *George*, 914 P.2d at 371, and corroborated nothing more than "an instance of commonplace activity." *Garcia*, 789 P.2d at 193. Finally, the officer did not know of any suspicious circumstances surrounding this es-

tablishment, *see, e.g., Canton*, 951 P.2d at 910–11 (suspect observed at locale known for its drug activity), nor did the officer observe any suspicious conduct on the part of the person described by the informant. *See, e.g., People v. D.F.*, 933 P.2d at 14 (suspect observed walking suspiciously stiff-legged as if concealing a weapon); *People v. Savage*, 698 P.2d 1330, 1335 (Colo.1985) (officer investigating complaint of one threatening others with a knife at a gas station observed defendant at the gas station in an excited state with various people focusing their attention upon him).

As a consequence, the corroboration of the anonymous tip in this case lacked the quality and quantity of detail sufficient to establish the reliability of the informant's tip. Considering the totality of the circumstances, there was no articulable and specific basis in fact to believe that Salazar was involved in illegal activity. We hold, therefore, that the officer did not possess reasonable suspicion to justify the investigatory stop of Salazar.[1]

### III.

For the first time on appeal, the prosecution asserts that the initial contact between Casias and Salazar was a consensual encounter, thereby obviating the requirement of probable cause or reasonable suspicion. In response, Salazar contends that, because the prosecution failed to raise this issue with the trial court, the prosecution cannot raise the issue in this appeal. We agree with Salazar's contention.

■ Colorado case law, in accord with United States Supreme Court precedent, recognizes three categories of police-citizen encounters: (1) arrest, (2) investigatory stop, and (3) consensual interview. *See People v. Johnson*, 865 P.2d 836, 842 (Colo.1994); *People v. Trujillo*, 773 P.2d 1086, 1089 (Colo. 1989). An arrest and an investigatory stop implicate the constitutional protections against unreasonable seizure, and must be justified by probable cause and reasonable suspicion, respectively. A consensual inter-

---

1. To hold otherwise would be to permit the wholesale seizure of citizens by police based solely on the fact that an anonymous, unreliable informant is able to describe a citizen's appearance.

view does not implicate these constitutional protections. *See Johnson,* 865 P.2d at 842.

■ It is axiomatic that issues not raised in or decided by a lower court will not be addressed for the first time on appeal. *See, e.g., Colby v. Progressive Cas. Ins. Co.,* 928 P.2d 1298, 1301 (Colo.1996); *Boatright v. Derr,* 919 P.2d 221, 227 (Colo.1996). This axiom applies with equal force to interlocutory appeals. *See, e.g., People v. Davis,* 903 P.2d 1, 3 n. 5 (Colo.1995) (declining to address argument that evidence was admissible as a search incident to arrest because prosecution did not make the argument before the trial court); *People v. Bland,* 884 P.2d 312, 322 (Colo.1994) (declining to reach question because it was not addressed by trial court and, in any event, was inappropriate for review under C.A.R. 4.1).

■ The prosecution relies upon our decision in *Johnson* as support for the notion that we will address the prosecution's argument about a consensual stop even where the issue was not raised or addressed below. *See* 865 P.2d at 840. *Johnson,* however, does not stand for this proposition. In that case, the trial court found that the prosecution had conceded the fact that the police-citizen encounter was a seizure. *See id.* at 838. We disagreed with the trial court's view that the prosecution had conceded the seizure issue. The prosecution in *Johnson* had clearly and repeatedly asserted in the trial court that the encounter was a consensual interview. The record in *Johnson* reflected the following:

> [I]n direct response to the [trial] court's inquiry as to whether the consent to a search overrides an illegal stop, the prosecutor told the court that he did not believe the encounter constituted a "stop or a seizure." Then, after the court summarily concluded that it was a stop, the prosecutor again explained his belief that this was the type of police-citizen encounter which did not implicate the Fourth Amendment. Simply because the court misconstrued the prosecutor's argument, and the prosecutor did not object to this misconstruction at every instance, on the record before us the People should not now be barred from raising the issue.

*Id.* at 840. Accordingly, because the seizure issue had been raised below, we proceeded to resolve the issue on appeal. *See id.* at 840–41.

In contrast to the scenario in *Johnson,* the prosecution in this case admits that it did not argue in the trial court that the encounter between Casias and Salazar was consensual. Rather, its entire argument centered upon the existence of reasonable suspicion to justify an investigatory stop. Hence, the prosecution's argument below was a concession that an investigatory stop, a seizure, had occurred. Because the issue of consensual encounter was not raised by the prosecution below, we decline to resolve the issue in this appeal. *See generally Colby,* 928 P.2d at 1300–01 (issues not addressed by trial court and which require factual determinations will not be addressed on appeal).

## IV.

We hold that the record supports the trial court's conclusion that Officer Casias lacked adequate justification to make an investigatory stop of Salazar. Accordingly, we affirm the trial court's suppression order and remand the case for further proceedings consistent with this opinion.

MULLARKEY, J., dissents, and VOLLACK, C.J., and KOURLIS, J., join in the dissent.

### Justice MULLARKEY dissenting.

The majority affirms the trial court's suppression order because the investigating officer, Officer Philip Casias, lacked adequate justification to make an investigatory stop of the defendant, Joseph Jason Salazar (Salazar). *See* maj. op. at 507. In its ruling, the majority refuses to address the People's argument that the initial encounter between Officer Casias and Salazar was consensual because it finds that the People failed to raise this issue in the trial court. *See* maj. op. at 507. In my opinion, we should address the People's argument and find that the initial encounter between Officer Casias and Salazar was a consensual interview. Accordingly, I respectfully dissent.

On August 20, 1997, the Pueblo Police Department received an anonymous tip that a person was selling cocaine at a certain bar. The tipster described the alleged drug dealer in significant detail and stated that the cocaine was in the person's right shoe. When Officer Casias arrived at the bar, he found Salazar, who matched the tipster's description, sitting at a table in the bar. Officer Casias approached Salazar and asked him to go outside. Salazar responded by standing up and walking outside. See maj. op. at 504. Once outside, Salazar consented to the search of his person which led to the discovery of the evidence and statements made by Salazar that were suppressed in this case.

The trial court found that Salazar's consent to the search of his person was given knowingly, voluntarily and intelligently. See maj. op. at 504. The trial court also stated:

And I don't think there's any question that when the officer asked the defendant to come outside, whether that constituted a custodial interrogation setting or not, it was, in fact, a seizure of the defendant.

The trial court ruled that Salazar was improperly stopped. It suppressed the evidence seized and statements made by Salazar as a result of the stop. See maj. op. at 504.

Three types of police-citizen encounters exist: (1) arrest, (2) investigatory stop, and (3) consensual interview. See People v. Johnson, 865 P.2d 836, 842 (Colo.1994). Only the first two implicate the protections of the Fourth Amendment of the United States Constitution and article II, section 7, of the Colorado Constitution. See id. Thus, while an arrest requires probable cause and an investigatory stop requires reasonable suspicion, a consensual interview requires neither. See id. In determining whether a seizure occurred, the court must look at the totality of the circumstances surrounding the incident and determine whether or not a reasonable person would believe he or she was free to leave and/or to disregard the official's request for information. See People v. Hill, 929 P.2d 735, 738–39 (Colo.1996).

The majority refuses to address whether the initial encounter between Officer Casias and Salazar was a consensual interview because it asserts that the issue was not raised at the trial court. See maj. op. at 507. Contrary to the majority, I believe that the issue regarding the initial encounter was raised and the trial court ruled that this encounter was not consensual.

The consensual encounter issue was raised by the defense counsel who argued at the hearing that the initial encounter was not consensual because Salazar was not free to leave. Salazar's counsel contended that "I don't think this is a situation where you have consensual contact between the police and a citizen," and argued that Salazar was not free to leave when Officer Casias asked him to go outside. Salazar's counsel explicitly stated:

And that's what his [Officer Casias's] intent is in this case, Judge—when a person believes that they're in custody when an officer directs you to go outside with them, and then when you go outside there's another officer standing there.... He's never told that he is free to leave.... He's never told that he doesn't have to consent.

In its oral ruling, the trial court accepted the defense counsel's argument. Although it held that Salazar consented to the search of his person, particularly his shoe, the court held that Salazar was seized inside the bar because he was not free to leave. Because Salazar raised the issue of whether the initial encounter was consensual, and the trial court ruled that it was not, we should address this issue on appeal. It is clearly the dispositive trial court ruling in this case and there is no valid reason to ignore it.

The question, then, is whether a police officer may approach and speak to a person in a public place, such as a bar. In my view, the propriety of the officer's conduct is well settled in the case law. See People v. Morales, 935 P.2d 936, 939 (Colo.1997) (upholding, as within the scope of a consensual interview, officers' actions in airport which included identifying themselves and displaying their badges; requesting to examine defendant's identification and airline tickets; and asking defendant where he lived and why he was in Denver); Johnson, 865 P.2d at 843 (holding that encounter lasting for a few minutes in which officers ap-

proached defendant at airport and asked to examine defendant's ticket and identification was a consensual interview); *People v. T.H.*, 892 P.2d 301, 303 (Colo.1995) (finding a consensual interview where police officer approached defendant who was loitering outside of an establishment and requested identification). Thus, I would conclude that the officer was free to approach Salazar and to speak to him in the bar. No reasonable suspicion was needed.

The proper test to determine whether the officer seized Salazar in the bar is whether a reasonable person would have felt free to decline the officer's request. *See Florida v. Bostick*, 501 U.S. 429, 436, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991) (applying free-to-decline -request test to case in which police boarded bus and approached defendant and stating free-to-leave test was not applicable). An encounter does not become a seizure if a suspect responds to an officer's request merely due to the inherent social pressure to cooperate with the police, *see People v. Cascio*, 932 P.2d 1381, 1388 (Colo.1997), or if the police do not inform the individual that he or she is free not to cooperate, *see People v. Melton*, 910 P.2d 672, 676 (Colo.1996). There is nothing in the record to indicate that the encounter was anything other than consensual. The officer did not stop Salazar. Rather, he walked up to Salazar who was seated in the bar and began talking to him. This case is analogous to many cases we have decided in which a car is parked and the officer approaches to ask the driver questions. In such a case, there is no stop and we have held that the officer may ask appropriate questions. *See Cascio*, 932 P.2d at 1387–88 (officers parked their car and approached defendant's parked vehicle); *Hill*, 929 P.2d at 739 (officers on foot patrol approached parked vehicle). There was no showing of force, no display of a weapon, and no touching of the defendant. *Compare Melton*, 910 P.2d at 677 (finding consensual interview and noting officers approached in a non-threatening manner without their guns drawn), *with People v. Diaz*, 793 P.2d 1181, 1186 (Colo. 1990) (holding no consensual interview because of show of authority by three officers who confronted defendant in a bar). All that happened was that Officer Casias requested that Salazar come outside, and Salazar complied by walking outside. As they were walking outside, Officer Casias asked Salazar two identification questions to which Salazar responded by giving Officer Casias his name and date of birth. Officer Casias stated that he never indicated that Salazar had to go with him and there is no evidence to the contrary. Based on the evidence in the record, I would hold that the initial encounter between Officer Casias and Salazar was a consensual interview.

Given that Salazar consented to a search of his person, I would hold that the trial court erred by suppressing the evidence and statements in this case. Accordingly, I respectfully dissent.

I am authorized to say that CHIEF JUSTICE VOLLACK and JUSTICE KOURLIS join in this dissent.