UNITED STATES of America, Appellant,

v.

John W. QUIGLEY; Johnny Ray Jones, Appellees.

No. 94–3312.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1995.

Decided April 27, 1995.

Marie K. McElderry, Washington, DC, argued (Dennis J. Dimsey, on the brief), for appellant.

John W. Gallup, Omaha, NE, argued (Vincent M. Powers of Lincoln, NE, on the brief), for appellee.

Before McMILLIAN, FAGG, and HANSEN, Circuit Judges.

FAGG, Circuit Judge.

A jury convicted John W. Quigley and Johnny Ray Jones of interfering with interstate commerce by robbing Stanley Spotted Calf and Oliver Turkey. *See* 18 U.S.C. § 1951(a) (1988). The district court granted the defendants' motion for judgment of acquittal, holding the evidence was insufficient as a matter of law to show commerce was affected within the statute's meaning. The Government appeals. We affirm.

██ In reviewing a judgment granting a motion for acquittal, we view the evidence in the light most favorable to the Government and affirm if a reasonable jury viewing the evidence in this light must have a reasonable doubt about the existence of an essential element of the crime. *United States v. Mundt,* 846 F.2d 1157, 1158 (8th Cir.1988). Viewed in the Government's favor, the evidence at trial established the following facts. Turkey and Spotted Calf are Native Americans who live in Valentine, Nebraska. On the night of the robbery, Turkey and Spotted Calf had been drinking liquor and wanted to buy more. Although liquor was sold in Valentine, Turkey and Spotted Calf did not have enough money to make a purchase there.

Nevertheless, Spotted Calf had a special arrangement with a liquor store owner in a nearby Nebraska town, Crookston. The store owner regularly cashed Spotted Calf's social security and pension checks and held some of the money to pay for Spotted Calf's future purchases. The owner, who resided in Valentine, routinely took Spotted Calf's orders over the telephone and then delivered the liquor to Spotted Calf on his way home. On the night in question, Turkey telephoned the store owner, made a beer purchase for Spotted Calf, and arranged for the owner to deliver the beer to Spotted Calf in Valentine. Before the owner could deliver the beer, however, Spotted Calf and Turkey became impatient and decided to try to find a ride to pick up the beer themselves.

Quigley and Jones had been drinking beer and driving around Valentine. They saw Spotted Calf and Turkey walking down the street. Quigley and Jones stopped and asked the men where they were going. After learning Spotted Calf and Turkey were looking for a ride to pick up beer in Crookston, Quigley and Jones agreed to provide transportation. On the way to Crookston, Quigley and Jones turned off the road, stopped the car, and demanded money from Turkey and Spotted Calf. Quigley and Jones took all Spotted Calf and Turkey had: eighty cents and a near-empty pouch of chewing tobacco. Quigley and Jones then beat Turkey, beat and stabbed Spotted Calf, and left the two injured men by the road.

Under 18 U.S.C. § 1951(a), robberies that hamper interstate commerce are federal crimes. The statute prohibits a robbery that "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." 18 U.S.C. § 1951(a) (1988). Commerce includes "all commerce between any point in a State ... and any point outside." *Id.* § 1951(b)(3). This definition of commerce reaches as broadly as Congress's commerce power. *United States v. Collins,* 40 F.3d 95, 100 (5th Cir.1994). The commerce power is not unbridled, however. Because of federalism, Congress only has power to regulate conduct that "exerts a substantial economic effect on interstate commerce." *Wickard v. Filburn,*

317 U.S. 111, 125, 63 S.Ct. 82, 89, 87 L.Ed. 122 (1942). "Congress may not regulate conduct that, standing alone, does not directly affect interstate commerce" or have a "substantial indirect effect on interstate commerce." *Collins,* 40 F.3d at 101. Although a probability of affecting commerce is sufficient in some cases, like extortion cases involving the depletion-of-assets theory, the probability must be realistic rather than merely speculative. *See United States v. Mattson,* 671 F.2d 1020, 1024 (7th Cir.1982); *United States v. Rabbitt,* 583 F.2d 1014, 1023 (8th Cir.1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

This case presents a very unusual attempted application of § 1951(a). In the overwhelming majority of cases involving the statute, the victim is a business engaged in interstate commerce. When a business that sells goods manufactured outside the state is robbed, interstate commerce is usually sufficiently affected for the purposes of § 1951(a). *See United States v. Davis,* 30 F.3d 613, 614–15 (5th Cir.1994) (robberies of gas stations interrupted interstate commerce because stations sold goods manufactured out-of-state and stations had to temporarily close after robberies), *cert. denied,* —— U.S. ——, 115 S.Ct. 769, 130 L.Ed.2d 666 (1995); *United States v. Brown,* 959 F.2d 63, 67–68 (6th Cir.1992) (attempt to rob tavern that purchased goods from outside state had realistic probability of affecting interstate commerce).

■ Quigley and Jones did not rob the liquor store, but instead robbed individuals who patronized the store. Actions normally have a lesser effect on interstate commerce when directed at individuals rather than businesses. *Collins,* 40 F.3d at 99–100; *see also United States v. Boulahanis,* 677 F.2d 586, 590 (7th Cir.), *cert. denied,* 459 U.S. 1016, 103 S.Ct. 375, 74 L.Ed.2d 509 (1982). Criminal acts directed towards individuals rather than businesses may violate § 1951(a) only if (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce, (2) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce, or (3) the acts cause or are likely to cause the

individual victim to deplete the assets of an entity engaged in interstate commerce. *Collins*, 40 F.3d at 100 (footnotes omitted). Under this standard, the theft of an individual's car did not affect interstate commerce within the meaning of § 1951(a) even though the theft prevented the individual, a national computer company employee, from attending a business meeting and using his cellular telephone to make business calls. *Id.* at 97–101.

In this case, the Government asserts the robbery affected commerce by preventing Turkey and Spotted Calf from reaching the store to make their purchase of beer, an item that had traveled in interstate commerce. The beer sale was completed over the telephone before the robbery, however, and there is no evidence Turkey and Spotted Calf intended to purchase anything else at the store. For the first time on appeal, the Government asserts the robbery affected commerce because Turkey and Spotted Calf were targeted as members of a class. Native Americans were the primary patrons of the liquor store in Crookston. According to the Government, a local practice of beating and robbing Native Americans had a realistic probability of discouraging the store's sales. This argument also fails. There is no substantial or convincing evidence that Quigley and Jones selected their victims because they were Native Americans. Likewise, there is no substantial or convincing evidence of a local practice of beating and robbing Native Americans. Last, we agree with the Government that the depletion-of-assets theory does not apply in this case. We conclude the robbery of Turkey and Spotted Calf had no effect or realistic potential effect on interstate commerce.

We do not condone the actions of Quigley and Jones. We simply hold those actions did not affect interstate commerce, and thus were not a federal crime under § 1951(a). Even though the federal jury acquitted Quigley and Jones of assaulting Turkey and Spotted Calf because of their national origin and of conspiring to interfere with their right to interstate travel, Quigley and Jones did not escape punishment for their attacks on Turkey and Spotted Calf. Quigley and Jones

were convicted of third-degree assault in Nebraska state court and served time in jail.

In sum, based on the evidence presented, a reasonable jury must necessarily entertain a reasonable doubt that the robbery of Turkey and Spotted Calf affected interstate commerce. We thus affirm the district court's judgment of acquittal.