# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-1943

_____

United States of America,

       Appellee,

    v.

Adrian Lamont McCraney,

       Appellant.

_____

No. 09-2330

_____

Appeals from the United States
District Court for the
Southern District of Iowa.

United States of America,

       Appellee,

    v.

Kennie Alexander Williams,

       Appellant.

_____

Submitted: January 13, 2010
Filed: July 22, 2010

_____

Before SMITH and COLLOTON, Circuit Judges, and KORNMANN,[1] District Judge.
_____

COLLOTON, Circuit Judge.

Adrian McCraney and Kennie Williams were each convicted by a jury of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), robbery in violation of the Hobbs Act, 18 U.S.C. § 1951, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The jury also found McCraney guilty of possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). The district court[2] sentenced Williams to a total of 225 months' imprisonment and McCraney to a total of 420 months' imprisonment.

On appeal, Williams challenges the district court's exclusion of his post-arrest statement to police, denial of his motion for severance, rejection of his proposed jury instruction on reasonable doubt, and denial of his motion for new trial. Williams also challenges his sentence, arguing that counts one and two of the indictment should have been grouped for purposes of the advisory guidelines, that facts increasing Williams's advisory sentence must be proved beyond a reasonable doubt, and that the sentence imposed by the district court is unreasonable. McCraney challenges the sufficiency of the evidence to convict him, and the district court's application of the career offender guideline at sentencing. We affirm the judgments of the district court.

---

[1]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable John A. Jarvey, United States District Judge for the Southern District of Iowa.

# I.

In late August 2007, Kennie Williams made arrangements to buy four ounces of cocaine from a drug dealer named Larry Jones. The two agreed to meet in the parking lot of the Super Wal-Mart in Coralville, Iowa, late in the evening on August 29 to conduct the transaction. Jones entered Williams's vehicle and handed Williams a one-ounce package of cocaine to inspect. Jones testified that Williams "started kind of fidgeting with [the package] . . . and discussing how he didn't think that it looked right."

As Jones tried to convince Williams to complete the deal, Adrian McCraney entered the vehicle on the passenger side and seated himself behind Jones. Jones was startled by McCraney's appearance, but Williams "said it was okay, that it was his cousin." McCraney began to question whether Jones was an undercover police officer, and while Jones was responding to McCraney, Williams kept fidgeting with the one package of cocaine. A Motorola phone box containing the rest of the cocaine remained in Jones's lap.

Suddenly, McCraney reached over the top of the seat in front of him and put a gun to Jones's chest. While Jones was held at gunpoint, Williams rifled through his belongings. Williams took the box with the remaining cocaine and emptied Jones's pockets, seizing Jones's ID, all of his money, a pack of cigarettes, a lighter, and a cell phone.

McCraney and Williams eventually permitted Jones to leave the vehicle, and then sped out of the parking lot with Williams driving. Jones followed on his motorcycle, but soon abandoned the pursuit and called 911 to report the robbery.

Police officers located the Williams vehicle and engaged in a high-speed chase down Interstate 380 into Shueyville, Iowa. During the chase, officers saw several

items thrown out of the front passenger-side window of the Williams car. Officers later searching along the route found a Motorola cell phone box containing several packages of cocaine and a handgun.

When the officers concluded that Williams would not stop voluntarily, one of the pursuing officers intentionally struck Williams's car, causing it to spin off the road and into a ditch. Police arrested McCraney and Williams. Officers searched the car and recovered one sealed package of cocaine and a clip and a bullet for a .45 caliber handgun. At the time of his arrest, Williams carried two cell phones – his own and Jones's – and $219 in cash. McCraney was carrying $137.

McCraney and Williams were both charged with possession of cocaine base with intent to distribute, Hobbs Act robbery, and possession of a firearm in furtherance of a drug trafficking crime. McCraney was also charged with possession of a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). After a trial in March 2008, a jury returned verdicts of guilty on all counts. The district court sentenced Williams to 165 months' imprisonment on both counts one and two, to be served concurrently, and 60 months on count three, to be served consecutively, for a total of 225 months' imprisonment. The court sentenced McCraney to 360 months on count one, 240 months on count two, and 120 months on count four, to be served concurrently, and 60 months on count three, to be served consecutively, for a total of 420 months' imprisonment.

II.

A.

Williams argues that the district court abused its discretion by refusing to admit into evidence a statement he made at the Coralville police station after his arrest. He argues that the statement was admissible under the residual exception to the hearsay

rule. That exception, set forth in Federal Rule of Evidence 807, provides that the district court may admit testimony if it has "equivalent circumstantial guarantees of trustworthiness" and the court determines that "(A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the rules of evidence] and the interests of justice will best be served by admission of the statement into evidence." We review the district court's ruling for abuse of discretion. *United States v. Thunder Horse*, 370 F.3d 745, 747 (8th Cir. 2004).

The disputed statement was a declaration by Williams that he did not know anything about the robbery of Jones prior to when it occurred, that he was taken by surprise when McCraney entered the car and pulled out a gun, that after the robbery McCraney instructed him to drive away from the parking lot, and that McCraney then put the gun to Williams's head and told him to keep driving while the police pursued them. Williams suggests that a statement given by an uncounseled arrestee who is under interrogation by law enforcement officers bears sufficient indicia of trustworthiness to warrant admission under Rule 807, because the very purpose of police interrogation is to obtain truthful statements that can be used to further an investigation.

The district court disagreed that the circumstances surrounding Williams's statement adequately guaranteed its reliability. The court ruled the statement identifying McCraney as the mastermind of the robbery was not admissible under Rule 807, because "[i]t does not bear indicia of trustworthiness for somebody to sit down and write out a statement that essentially implicates somebody else." We agree with this sensible conclusion. Williams was arrested after leading police on a high-speed chase. The police found a cell phone belonging to the robbery victim on his person and located cocaine and accessories to a handgun in his car. Williams could not plausibly deny altogether that he had participated in the robbery and subsequent

flight, so he had clear motivation to present himself as an unwitting and unwilling participant. The district court did not abuse its discretion in ruling that a statement made under these circumstances is not sufficiently trustworthy to be admitted into evidence under Rule 807.[3]

B.

Williams next argues that the district court erroneously instructed the jury on the government's burden to establish guilt beyond reasonable doubt, and should have used his proposed instruction instead. The district court used the Eighth Circuit's pattern instruction on reasonable doubt:

> A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely and act upon it. However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt.

Eighth Circuit Manual of Model Criminal Jury Instructions – Instruction 3.11(2009).[4]

---

[3]Williams also complains that the district court should have granted McCraney's motion to sever the defendants for trial, because admission of Williams's post-arrest statement would have violated McCraney's right of confrontation under the Sixth Amendment. *See Bruton v. United States*, 391 U.S. 123 (1968). Because the Williams statement was excluded as hearsay, there was no risk of any such violation, and Williams has no standing to invoke McCraney's rights in any event. *See United States v. Morales*, 477 F.2d 1309, 1316 (5th Cir. 1973).

[4]Williams proposed this instruction:

A reasonable doubt is such a doubt as fairly and naturally arises in your mind and by reason of which you cannot say that you have a full and

We have upheld the constitutionality of Model Instruction 3.11, *see United States v. Foster*, 344 F.3d 799, 802 (8th Cir. 2003); *United States v. Rosso*, 179 F.3d 1102, 1104 (8th Cir. 1999), and neither the "hesitate to act" phrase, *see Holland v. United States*, 348 U.S. 121, 140 (1954); *Rosso*, 179 F.3d at 1104, nor the "not the mere possibility of innocence" language, *Foster*, 344 F.3d at 802, is objectionable. *See also Victor v. Nebraska*, 511 U.S. 1, 17 (1994) (approving "not a mere possible doubt" phraseology). Williams's argument that the instruction failed to convey the level of certitude that the jury must reach is thus unavailing.

III.

A.

McCraney challenges his conviction on the grounds that there was insufficient evidence to support the jury's verdict against him. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the verdict, and we will reverse only if no reasonable jury could have found the defendant guilty

---

abiding conviction of the guilt of the defendant; and if, after considering all of the circumstances as disclosed by the evidence, you find your mind wavering or vacillating, then you have a reasonable doubt, and Mr. Williams is entitled to the benefit of such doubt and you must acquit him. A reasonable doubt may arise from the evidence in the case or it may arise from the lack or failure of evidence produced by the government, and it must be such a doubt as would cause a reasonable, prudent and considerate person to pause and hesitate before acting in the graver and more important affairs of life. But you should not ignore credible evidence to hunt for doubt, and you should not entertain such doubt as is purely imaginary or fanciful or based on groundless conjecture. If, after a careful and impartial consideration of all the evidence in the case, you have a full and abiding conviction of the guilt of the defendant, then you are satisfied beyond a reasonable doubt, otherwise you are not satisfied beyond a reasonable doubt.

beyond a reasonable doubt. *United States v. Scofield*, 433 F.3d 580, 584-85 (8th Cir. 2006).

McCraney's primary argument is that the testimony of Larry Jones was unreliable. Determinations of witness credibility, however, are within the province of the jury and "virtually unreviewable on appeal." *United States v. Thompson*, 560 F.3d 745, 748-49 (8th Cir. 2009) (internal quotation omitted). Attorneys representing both defendants cross-examined Jones extensively, and the jury learned that Jones was a drug trafficker who had provided false information to the police early in the investigation in an effort to conceal his own unlawful behavior. The jury also heard that Jones testified at trial pursuant to a plea agreement with the government, that he had not yet been sentenced, and that the government could recommend a reduced sentence if Jones provided assistance to the government by testifying. The jury evidently chose to credit Jones's testimony despite his checkered background and potential bias, and we will not disturb its judgment.

McCraney also notes that no identifiable fingerprints were found on the handgun, magazine, Motorola cell phone box, or plastic bags containing cocaine. Fingerprint evidence might have strengthened the case, but it is not required to convict, and the testimony given by Jones and the law enforcement officers involved in the apprehension of McCraney and Williams provided ample evidence on which to find McCraney guilty of the crimes charged.

B.

Williams does not claim that he was entitled to a judgment of acquittal, but he contends that the verdict was against the weight of the evidence, and that the district court abused its discretion by denying his motion for new trial on three counts of conviction. Federal Rule of Criminal Procedure 33(a) permits a court to grant a new trial "if the interest of justice so requires." "Where a defendant moves for a new trial

on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." *United States v. Huerta-Orozco*, 272 F.3d 561, 565 (8th Cir. 2001) (internal quotation omitted). We review the denial of a motion for new trial for abuse of discretion. *United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006).

Williams first asserts a right to a new trial on the charge of possession with intent to distribute, echoing McCraney's claim that the testimony of Larry Jones was incredible. As we have said, the jury was entitled to believe Jones, and we do not think the questions about his credibility were so strong as to require the district court to find that the verdict was against the great weight of the evidence.

Williams next argues that he should receive a new trial on the Hobbs Act robbery charge, because the evidence did not prove a sufficient nexus with interstate commerce. The Hobbs Act provides for punishment of anyone who "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery," 18 U.S.C. § 1951(a), and we have stated that the statute reaches to the full extent of Congress' power to regulate interstate commerce. *United States v. Quigley*, 53 F.3d 909, 910 (8th Cir. 1995). The government need prove only a minimal effect on interstate commerce to support a conviction under the Hobbs Act. *United States v. Williams*, 308 F.3d 833, 838 (8th Cir. 2002).

Congress may well have been motivated to enact the Hobbs Act by "offenses with a broad impact on interstate commerce," but the text of the statute does not exclude local robberies that satisfy the requirement of an effect on interstate commerce. *United States v. Farmer*, 73 F.3d 836, 843 (8th Cir. 1996). This court has observed that a Hobbs Act prosecution predicated on robbery of an individual, as opposed to a business, is a "very unusual" application, but not necessarily beyond the

scope of the statute. *Quigley*, 53 F.3d at 910. In *Quigley*, we said that the robbery of two individuals on their way to pick up beer ordered over the telephone "had no effect or realistic potential effect on interstate commerce," and was therefore not a federal crime under § 1951(a). *Id*. at 910-11. In *Williams*, however, we held that the defendant's robbery of a taxi cab driver in Cedar Rapids, Iowa, violated the Hobbs Act, because "the cab transported to the airport people and packages that were going to travel in interstate commerce; the cab occasionally crossed state lines as a part of its business; and the insurance money covering damage to the cab and the repair parts for the radio came from out-of-state." 308 F.3d at 839.

This case involves the robbery of an individual drug trafficker. In *United States v. Cox*, 942 F.2d 1282 (8th Cir. 1991), we held that the robbery of cash, three ounces of cocaine, and a firearm from the private residence of a drug trafficker violated the Hobbs Act, where the evidence showed the interstate character of the victim's drug trade. *Id*. at 1286. We see no material distinction between this case and *Cox*. The evidence here showed that the cocaine stolen from Jones necessarily originated in South America, and that Jones intended to sell it in Iowa. The taking of that cocaine by Williams thus disrupted the movement of a commodity in interstate commerce. This proof was sufficient to support the jury's verdict. *Id*.; *see United States v. Parkes*, 497 F.3d 220, 231 (2d Cir. 2007) (holding that evidence was sufficient to support a Hobbs Act conviction for attempted robbery of a large bag of marijuana, fifty-eight smaller "nickel bags" of marijuana, and $4,000 cash from "a local, part-time marijuana dealer" in New York, where testimony showed that marijuana "is almost exclusively trucked into the United States, predominantly through Mexico," and that "'[v]ery little' marijuana is grown in New York"); *cf. United States v. Thomas*, 159 F.3d 296, 297-98 (7th Cir. 1998) (upholding Hobbs Act conviction for robbery of $675, which disrupted a "small" crack cocaine sale and "obstructed commerce in a pretty literal sense," where the evidence showed that the cocaine would have originated in South America and thus would have traveled in commerce).

Finally, Williams argues that the evidence was insufficient to convict him for possession of a firearm in furtherance of a drug trafficking offense under 18 U.S.C. § 924(c), because he never "possessed" the firearm. He points out that the gun was in McCraney's hands throughout the encounter with Jones, and that it was thrown from the car on the passenger side, where McCraney was sitting. Williams says that he never had access to the firearm, and had no power or intention to exercise dominion or control over the weapon. He concludes that the gun was therefore in McCraney's exclusive possession, and that his conviction on the § 924(c) count cannot stand.

Possession of a firearm "can be actual or constructive, as well as sole or joint." *United States v. Piwowar*, 492 F.3d 953, 955 (8th Cir. 2007). Generally, "[c]onstructive possession of [a] firearm is established if the person has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." *United States v. Walker*, 393 F.3d 842, 847 (8th Cir. 2005) (internal quotation omitted). Control over premises such as a vehicle may establish constructive possession of a gun discovered within, *see, e.g.*, *United States v. Hiebert*, 30 F.3d 1005, 1008-09 (8th Cir. 1994); *United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir. 1993), and possession may be established by evidence that the defendant had power to control the firearm through another person. *United States v. Wells*, 721 F.2d 1160, 1162 (8th Cir. 1983) (upholding conviction for unlawful possession where the defendant "was sufficiently associated with the persons having physical possession that he was able to cause it to be produced for a customer") (internal quotation and alterations omitted). In this case, McCraney was in actual possession of the gun throughout the robbery episode, and the question presented by Williams is whether the evidence supports a finding that Williams had joint, constructive possession of the gun that remained in McCraney's hands.

There is authority suggesting that by acting in concert with McCraney to commit armed robbery, Williams jointly possessed the firearm that McCraney actually

possessed. In *United States v. Bryant*, 523 F.3d 349 (D.C. Cir. 2008), the court held that Bryant constructively possessed a shotgun that was actually possessed by an associate, Walker, where the two men cased a charter bus for an apparent robbery, donning heavy coats and masks and approaching the bus while Walker carried one gun and left another in a nearby vehicle. The court relied on Bryant's "proximity to both guns, coupled with his suspicious attire, his initial evasive conduct towards the police officers, and the evidence that Bryant was acting in concert with an individual who was actually carrying one of the weapons on his person," in holding that there was "adequate evidence for a juror to conclude that Bryant constructively possessed both firearms." *Id.* at 356. Similarly here, there was sufficient evidence for a jury to find that Williams arranged the cocaine transaction with Jones, drew Jones into the vehicle to facilitate the robbery, and then carried out a plan to confiscate Jones's possessions while McCraney kept the gun trained on Jones.

We need not decide whether concerted action with a person actually possessing a firearm is sufficient, by itself, to establish joint possession, because the evidence here is stronger. After Williams and McCraney robbed Jones, Williams drove the vehicle away from the scene, knowing that he was carrying away both McCraney and the firearm used in the robbery. At that point, especially given Williams's concerted action with McCraney during the robbery, a reasonable jury could find that Williams constructively possessed the firearm during the getaway, and that he did so in furtherance of his joint possession with intent to distribute the cocaine that was taken from Jones. *See United States v. Gardner*, 488 F.3d 700, 714 (6th Cir. 2007) (holding that driver of vehicle constructively possessed firearms in actual possession of passengers, where he drove the others to a motel for the purpose of using the firearms to commit a drug trafficking offense); *United States v. Richardson*, No. 87-5006, 1987 WL 38924, at *2-3 (4th Cir. Nov. 2, 1987) (per curiam) (affirming conviction where the defendant's "acts of twice removing [from police pursuit] the vehicle containing his brother and the gun constituted conduct manifesting sufficient 'dominion and

control' over the gun as a part of its known contents to establish constructive possession").

## IV.

Williams also challenges the sentence imposed by the district court. He first contends that the district court should have "grouped" the first and second counts of conviction under USSG § 3D1.2 when calculating the advisory guideline range, and that failure to do so was serious procedural error that requires resentencing. We review a district court's interpretation and application of the sentencing guidelines *de novo*. *United States v. Mathijssen*, 406 F.3d 496, 498 (8th Cir. 2005).

Section 3D1.2 calls for the grouping of "closely related counts," which are defined as "counts involving substantially the same harm." Williams argues that his convictions for robbery and possession with intent to distribute cocaine base should have been grouped pursuant to USSG § 3D1.2(c). That subsection provides that counts "involve substantially the same harm" when "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts." Williams argues that this stipulation is satisfied because the guideline applicable to his robbery conviction includes a specific offense characteristic that calls for a one-level increase "[i]f a . . . controlled substance was taken, or if the taking of such item was an object of the offense." USSG § 2B3.1(b)(6).

We conclude that the district court properly declined to group the counts of conviction, because the conduct "embodie[d]" in the drug trafficking count was not treated as a specific offense characteristic in the robbery guideline. The robbery guideline provides for an increased offense level if a controlled substance was "taken" in the robbery. Thus, if Williams had been convicted for simply possessing the cocaine that he took during the robbery, that conduct would have been covered by

§ 2B3.1(b)(6), and grouping would have been appropriate. It is impossible to take a controlled substance during a robbery without possessing it, and failure to group those offenses would run counter to the goal of the grouping rules to prevent "double counting" of offense behavior. *See* USSG § 3D1.2, comment. (n.5).

But Williams's drug conviction embodies more than simple possession. He was convicted of possessing with intent to distribute, a more serious offense. The specific offense characteristic in the robbery guideline accounts for a robber's possession of drugs that he has stolen, but it does not punish the aggravating circumstance of the robber's intent to distribute the drugs. To group the counts of conviction would undermine the purpose of the guidelines to sanction drug trafficking more severely than drug possession. The district court's refusal to group did not result in double counting; it ensured appropriate incremental counting of Williams's intent to distribute cocaine. We thus conclude that the court's decision on grouping was not procedural error.[5]

---

[5]The district court ruled that § 3D1.2(d) prohibited grouping of the robbery and drug trafficking counts, because the robbery guideline, § 2B2.1, is "[s]pecifically excluded from the operation *of this subsection*." USSG § 3D1.2(d) (emphasis added). We do not affirm on this ground, because – as the district court recognized – exclusion from the operation of § 3D1.2(d) does not, by the plain terms of the provision, preclude grouping under other subsections of § 3D1.2. *See* § 3D1.2(d) ("Exclusion of an offense from grouping under this subsection does not necessarily preclude grouping under another subsection."); *United States v. Tank*, 200 F.3d 627, 632-33 & n.10 (9th Cir. 2000). The district court felt constrained by *United States v. Kiel*, 454 F.3d 819 (8th Cir. 2006), to reach a contrary conclusion, but we do not read that opinion so broadly. *Kiel* did note that the applicable guideline was "[s]pecifically excluded from the operation of this [sub]section" under § 3D1.2(d), but relied heavily on commentary governing § 3D1.2(b), and ultimately concluded that the defendant's offense conduct under multiple counts of conviction could not be "considered substantially the same harm for grouping purposes under § 3D1.2." 454 F.3d at 822. This analysis of § 3D1.2(b) would have been unnecessary if the court had construed the exclusion under § 3D1.2(d) to preclude grouping under all subsections of § 3D1.2. *Cf. United States v. Weasel Bear*, 356 F.3d 839, 842 (8th Cir. 2004).

Williams next argues that the district court erred procedurally by failing to give adequate consideration to the sentencing factors listed in 18 U.S.C. § 3553(a). Williams did not object at sentencing on this ground, so we review for plain error. *United States v. Statman*, 604 F.3d 529, 534 (8th Cir. 2010). The record refutes his contention. The district court, after citing § 3553(a), engaged in a lengthy analysis of the nature and circumstances of the offense, as well as Williams's history and characteristics. The court discussed the dangerous nature of the armed robbery and high-speed chase, Williams's extensive criminal history, and its concern with deterring future criminal behavior and protecting the public. Williams may disagree with the weight that the court elected to give these various considerations, but there was no plain error in the procedural adequacy of the court's consideration of the factors.[6]

McCraney challenges the district court's application of the career offender guideline, USSG § 4B1.1, to calculate his advisory guideline sentencing range. He asserts that the district court erroneously attributed to him a 1997 Illinois robbery conviction in the name of Adrian Smallwood. We conclude that the district court did not clearly err in finding that McCraney and the "Adrian Smallwood" convicted in Illinois were the same person. Illinois court records show that the 1997 conviction of Adrian Smallwood was ordered to run concurrently with two other convictions entered in the name of Adrian McCraney – convictions that McCraney admits were attributable to him. When McCraney was arrested for the robbery of Larry Jones in August 2007, he gave police the name of "Adrian Smallwood." The district court thus had ample basis to find that McCraney used the name "Adrian Smallwood" as an

---

[6]Williams also argues that facts found by the court at sentencing must be proved beyond a reasonable doubt, even under the advisory guideline regime that now prevails, but this contention is foreclosed by circuit precedent, *United States v. Garcia-Gonon*, 433 F.3d 587, 593 (8th Cir. 2006), and he raises the argument only to preserve it for further review.

alias, and that the 1997 conviction in the name of "Smallwood" was indeed a prior conviction of McCraney's.

McCraney separately contends that the career offender guideline is unduly harsh, and that the district court should not have applied it. If he means that the court should have ignored the guideline when calculating the advisory guideline range, the contention is without merit. "The determination of whether to apply the career offender Guidelines to calculate the advisory Guidelines range is not a matter left to the district court's discretion." *United States v. Berni*, 439 F.3d 990, 992 (8th Cir. 2006) (per curiam). McCraney does not develop an argument that the sentence imposed was substantively unreasonable under § 3553(a), and under our deferential standard of review, *see Gall v. United States*, 552 U.S. 38, 51 (2007), and the presumption of reasonableness that attends the district court's selection of a sentence within the advisory range, *see Rita v. United States*, 551 U.S. 338, 347 (2007); *United States v. Lincoln*, 413 F.3d 716, 717 (8th Cir. 2005), we discern no abuse of discretion.

Williams also makes a cursory claim of substantive unreasonableness at the conclusion of his argument that the district court failed adequately to consider the § 3553(a) factors. The court sentenced Williams, too, within the advisory range, and we presume that this choice to conform with the recommendation of the Sentencing Commission was not unreasonable. In view of the violent and dangerous nature of the offense conduct and Williams's serious criminal history, we see no basis to conclude that the district court exceeded its wide range of discretion in selecting a sentence.

\*          \*          \*

The judgments of the district court are affirmed.

-16-

KORNMANN, District Judge, concurring in part and dissenting in part.

I join the majority opinion with one exception. I respectfully dissent as to the Hobbs Act, 18 U.S.C. § 1951, convictions. I will not discuss grouping questions under the Guidelines since this is, after all, nothing but a dissent.

The majority opinion relies largely on *United States v. Cox*, 942 F.2d 1282 (8th Cir. 1991). There is precious little in the *Cox* opinion to guide us. "Based on the evidence at trial, we conclude that the Government sufficiently proved the interstate character of Perez's drug trade. *Cf. United States v. French*, 628 F.2d 1069, 1077-78 (8th Cir.) (extortion from business regularly and substantially involved in interstate commerce supplies requisite nexus), *cert. denied*, 449 U.S. 956 . . . (1980)." *Cox*, 942 F.2d at 1286.

The victim here was a small time drug dealer. The total amount of cocaine stolen was four ounces. There was no sufficient evidentiary foundation to show that he was "regularly and substantially involved in interstate commerce." The theory of the prosecution must have been that the robbery involving the small quantity of cocaine apparently obstructed, delayed, or affected commerce or the movement of any article or commodity in commerce. This, however, was nothing but a local robbery which should have been prosecuted, if at all, in state court. Hobbs Act charges in a case of this type contribute to the diminishment of federalism in our country where, in the present course of things, any illegal activity will eventually be a federal crime of some sort.

I believe this case is controlled by the more recent and definitive case of *United States v. Quigley*, 53 F.3d 909, 910 (8th Cir. 1995). "The commerce power is not unbridled, however. Because of federalism, Congress only has power to regulate conduct that 'exerts a substantial economic effect on interstate commerce.' *Wickard v. Filburn*, 317 U.S. 111, 125 . . . (1942). 'Congress may not regulate conduct that,

standing alone, does not directly affect interstate commerce' or have a 'substantial indirect effect on interstate commerce.' *Collins*, 40 F.3d at 101." There was no evidence in the present case of any "substantial economic effect on interstate commerce."

We are further instructed in *Quigley*: "Criminal acts directed towards individuals rather than businesses may violate § 1951(a) only if (1) the acts deplete the assets of an individual who is directly and customarily engaged in interstate commerce, (2) the number of individuals victimized or the sum at stake is so large that there will be some cumulative effect on interstate commerce, or (3) the acts cause or are likely to cause the individual victim to deplete the assets of an entity engaged in interstate commerce. *Collins*, 40 F.3d at 100 (footnotes omitted). Under this standard, the theft of an individual's car did not affect interstate commerce within the meaning of § 1951(a) even though the theft prevented the individual, a national computer company employee, from attending a business meeting and using his cellular telephone to make business calls. Id. at 97-101." *Id.* I respectfully submit that the theft here did not and could not satisfy any of the three tests described. With this country awash in illegal drugs, the robbery here, as in *Quigley* and *Collins*, "had no effect or realistic potential effect on interstate commerce." I would set aside the robbery convictions and remand to the district court to conduct another sentence hearing.

_____