UNITED STATES of America,
Plaintiff,

v.

J.D.P., Defendant.

No. CR 12–30121–01–RAL.

United States District Court,
D. South Dakota,
Central Division.

Nov. 21, 2012.

---

FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

ROBERTO A. LANGE, District Judge.

J.D.P. was charged in a Juvenile Information with two counts of arson. Doc. 1. The Court held a court trial on October 25, 2012. At the conclusion of the court trial, the Court took the matter under advisement.

## I. Findings of Fact

### A. Charges and Facts Concerning the Structure Burned

J.D.P. was charged in Count I of the Juvenile Information as follows:

On or about the 8th day of June, 2012, in South Antelope, in Todd County, in Indian country, in the District of South Dakota, J.D.P., an Indian, committed a violation of law whereby he became a juvenile delinquent, in that at such time and place he did willfully and maliciously set fire to and burn the residence and dwelling of Colleen Small Bear, a trailer home, in violation of 18 U.S.C. §§ 5032, 1153, and 81.

Count II of the Juvenile Information charged J.D.P. as follows:

On or about the 17th day of June, 2012, in South Antelope, in Todd County, in Indian country, in the District of South Dakota, J.D.P. and A.J.M.M., Indians, committed a violation of law whereby they became juvenile delinquents, in that at such time and place they did willfully and maliciously set fire to and burn the residence and dwelling of Colleen Small Bear, a trailer home, and did aid and abet each other in the offense, in violation of 18 U.S.C. §§ 5032, 1153, 81 and 2.

The fires at issue on June 8 and 17, 2012, destroyed a trailer home in the South Antelope community. The trailer home was purchased by Tonya Farmer, the daughter of Colleen Small Bear, in 2006, for approximately $1,500.00. Tonya Farmer's twin sister, Sonja Farmer, later bought the trailer home for $800.00. Sonja Farmer then transferred ownership of the trailer home to her mother, Colleen Small Bear. Around 2008, Colleen Small Bear had the trailer moved to a lot that she owned in South Antelope. South Antelope is in "Indian country" on the Rosebud Indian Reservation in South Dakota, within the territorial jurisdiction of the Court. Ex. 1.

A question exists as to whether the trailer home at the times of the fires was a "dwelling" as alleged in the Juvenile Information or a "structure." After the trailer home was moved to South Antelope in 2008, Sonja Farmer, the daughter of Colleen Small Bear, lived in the trailer home at times with some of her children and a granddaughter. By 2012, the trailer home was in rough condition. Sonja Farmer and members of her family spent some nights in the trailer home during January and February of 2012, and for part of March of 2012. Sonja Farmer and her family stopped spending nights at the trailer home in March of 2012 because

there were electrical problems, a leaking roof, and difficulty keeping adequate heat in the trailer home. By March of 2012, most of the windows of the trailer home had been broken and either were boarded up or had plastic over them, making it difficult to keep the trailer home warm. In addition, part of the ceiling of the trailer home was caved in over the kitchen, the roof was leaking in that area, and the lights in certain areas of the trailer home would flicker or work only sporadically.

Neither Sonja Farmer nor her mother Colleen Small Bear had financial resources to repair the trailer in 2012. When Sonja Farmer stopped staying nights at the trailer, the electricity was shut off but the water supply was still on. Sonja Farmer and her family stayed nights with Sonja's sister Tonya Farmer and her family, as well as at other homes. Sonja Farmer kept most of her family's personal property in the trailer home. When the first fire occurred on June 8, 2012, the trailer home had a working refrigerator, a working stove, furniture, televisions, clothes, pictures, heirlooms, artwork, beadwork, beds, statues, and a stereo system. Sonja Farmer had removed the washer and dryer from the trailer home and some clothing before the first fire on June 8, 2012. Sonja Farmer returned to the trailer home periodically between March and early June of 2012 to retrieve clothing for her and her family to wear. Sonja Farmer had moved some clothes and pictures in bags back to the trailer home just two weeks before the first fire. Sonja Farmer and her mother planned to repair the trailer home when they had the money to do so, but had neither started repairs to return the home to a condition suitable to habitation nor received estimates for any repairs.

There were two inoperable vehicles left by members of the Small Bear family at the trailer home as well. One vehicle—a Ford Explorer—had windows that were shot out and needed a transmission. Colleen Small Bear had purchased a transmission for the vehicle in 2010 and stored it underneath the trailer, but had not arranged for the transmission to be installed. Neither of the two vehicles had been in running order since approximately 2009, although the Small Bear family had intended throughout this time to repair the vehicles when they had the money to do so.

The trailer home and vehicles had been subject to vandalism. Colleen Small Bear and Sonja Farmer had placed a padlock on the door of the trailer home and had boarded up the windows before June of 2012. They had no timetable in mind when to repair the trailer home to make it suitable for habitation again, other than whenever they had sufficient funds available to do so.

### B. Background Facts Concerning Defendant

Defendant J.D.P. is an "Indian" for purposes of federal criminal jurisdiction. Ex. 1. J.D.P. is a member of the Gangster Disciples and bears the pitchfork tattoo of the Gangster Disciples on his arm. During the summer of 2012, J.D.P. frequently stayed at the home of his aunt, Priscilla "Becca" Kills The Enemy ("Kills The Enemy"). The home of J.D.P.'s aunt is very near the Small Bear trailer home where the fires occurred. Pictures of the trailer home taken after the second fire show the Kills The Enemy home in the background. Ex. 17; Ex. 19; Ex. 20. South Antelope is generally the territory of the Surenos 13 gang, with the only pocket of territory associated with the Gangster Disciples being the Kills The Enemy home, where J.D.P. and J.D.P.'s older brother, also a member of the Gangster Disciples, stayed during the summer of 2012.

The Small Bear family is associated with the Surenos 13 gang. J.D.P. and his Gangster Disciples affiliates have had conflicts with the Surenos 13 gang and members of the Small Bear family within the gang. J.D.P. testified to being involved in a number of fights with members of the Surenos 13 gang, including members of the Small Bear family, estimating that he had been involved in approximately four verbal confrontations and eight physical confrontations involving at least someone with a weapon. J.D.P. acknowledged that there was bad blood between his gang and the gang of the Small Bears. J.D.P. also testified that he was not happy about the Small Bear trailer home being on what J.D.P. considered his turf.

A.J.M.M. is a friend of J.D.P. J.D.P., who is 17 years old, is approximately three years older than A.J.M.M. A.J.M.M.'s sister has the same last name as J.D.P., but A.J.M.M. and J.D.P. are not blood relatives. During the summer of 2012, A.J.M.M. at times lived with his mother in Valentine, Nebraska, and at other times stayed with his sister in Mission, South Dakota. Mission is a separate community from South Antelope, but is located approximately a mile or two west of South Antelope.

During the summer of 2012, A.J.M.M. hung out with J.D.P. on occasion. A.J.M.M., while he did not consider himself to be a member of the Gangster Disciples, was affiliating with members of the Gangster Disciples in the summer of 2012. J.D.P. thought that A.J.M.M. had been beaten into the Gangsters Disciples in Valentine, Nebraska. A.J.M.M. had witnessed, and perhaps been involved in, gang fights between the Gangster Disciples and the Surenos 13 gang of South Antelope.

## C. June 8 Fire

The fire to the trailer home on June 8 was set by J.D.P. or A.J.M.M. or both.

Both A.J.M.M. and J.D.P. testified. The testimony of A.J.M.M. and J.D.P. cannot be reconciled; J.D.P. claims that A.J.M.M. set fire while J.D.P. was present, while A.J.M.M. says that he was not in South Antelope on June 8, but that J.D.P. admitted to A.J.M.M. that J.D.P. started the fire.

A.J.M.M. testified that he was in Valentine at his mother's home at the time of the first fire on June 8. A.J.M.M. testified that he learned of the fire on June 10, 2012, when he was with J.D.P. According to A.J.M.M., J.D.P. told A.J.M.M. that J.D.P. set the fire and wished the trailer home had burned to the ground because the trailer home was on his turf and he did not like it there. J.D.P. did not talk further with A.J.M.M. about the first arson.

The Government produced no witnesses to verify that A.J.M.M. was in Valentine on June 8. But J.D.P. is the only witness that testified to A.J.M.M. being in South Antelope on the day of the first fire. The Government presented evidence that J.D.P. was in South Antelope near the trailer home close in time to when the first fire was started. Rachel Farmer, who is Colleen Small Bear's daughter and Sonya Farmer's sister, testified that, in the early morning hours of June 8, 2012, her twin babies were awake so she drove through South Antelope with the babies in car seats trying to get them back to sleep. While driving through South Antelope, she saw J.D.P. and one of his brothers near the Small Bear trailer home in the roadway hollering. Rachel Farmer did not see J.D.P. set a fire or do anything to the trailer home, but learned the next morning that the trailer home had been damaged in a fire.

In contrast with A.J.M.M.'s testimony, J.D.P. testified that A.J.M.M. was with him in South Antelope on the evening of June 7 and the early morning of June 8,

2012, during which time J.D.P. was drinking vodka and was "buzzed up." According to J.D.P., A.J.M.M. asked J.D.P. if he wanted to break into the Small Bear trailer home, and J.D.P. agreed to go with A.J.M.M. to the trailer home.

The Court observed J.D.P. carefully while he testified. The Court was able to see J.D.P. from a distance of a few feet, looking at his right profile given the configuration of the witness stand and the bench. J.D.P. gave very short answers and initially appeared self-assured. However, when J.D.P. began testifying about what occurred on the early morning of June 8, his cheeks reddened, he shifted somewhat uncomfortably in the witness chair, and his demeanor changed somewhat. After testifying about events of the early morning of June 8, J.D.P. seemed to regain his initial self-confidence. The Court observed no such changes in the demeanor of A.J.M.M. during his testimony. Observation of these two witnesses while testifying leads the Court to credit the testimony of A.J.M.M. more than that of J.D.P.

According to J.D.P.'s testimony, on the early morning of June 8, 2012, he went to the trailer home and tried to break the padlocked front door by kicking it four times. The padlocked front door of the trailer home would not give way, despite J.D.P.'s kicking of it. J.D.P. testified that he then went around to the back of the trailer home where he saw A.J.M.M. on a picnic table peeking through a window of the trailer home. J.D.P. looked into the trailer home through the window, saw black trash bags—testimony consistent with Sonja Farmer's testimony as to how she stored some clothes—and noticed that the trailer home, in his words, "stunk." J.D.P. testified, untruthfully in the Court's assessment, that as he began to leave, he looked back and saw A.J.M.M. using a lighter to light a blanket hanging at the window. After setting the June 8 fire, the boys, according to J.D.P, walked to the residence of A.J.M.M.'s sister in Mission while the trailer home burned. J.D.P. testified that thereafter he told people who asked that he did not know who started the fire.

J.D.P.'s testimony regarding what happened on June 8, 2012, was not credible. At a minimum by his own admission, J.D.P. knew that an offense of arson was being committed. J.D.P. was intoxicated, kicked the front door of the trailer four times in trying to break the lock, and was at the window looking inside the trailer home. The Court did not believe J.D.P.'s disavowal of involvement in igniting the June 8 fire.

Fire fighters responded to the fire at the trailer home on June 8, 2012, in time to preserve the structure of the trailer home, although it was damaged. By the time the fire was extinguished, approximately one-third of the trailer home in the area of the bedrooms had been charred. No cause-and-origin investigation was undertaken after the June 8, 2012 fire.

Colleen Small Bear and Sonja Farmer entered the trailer home after the June 8, 2012 fire. They piled up items in the middle of the trailer home that were damp or smoke damaged. The bedrooms were badly damaged, but the kitchen and living room were not as damaged. Some pictures that had been left on the wall were salvageable, as was some artwork. Colleen Small Bear and Sonja Farmer boarded up the trailer, left items in the home intending to return at a later time to sort through them, and padlocked the trailer home from the exterior. No one stayed at the trailer home between June 8 and June 17, 2012, and the trailer home was plainly uninhabitable between those dates.

### D. June 17 Fire

As concerns the fire on June 17, 2012, little of the testimony of A.J.M.M. and J.D.P. can be reconciled; one or both of them caused the fire of June 17, 2012, but both blame the other. Either J.D.P. or A.J.M.M. or both, once again, are not being truthful with respect to the June 17, 2012 fire.

A.J.M.M. testified that he was with J.D.P. at the home of J.D.P.'s aunt, near the Small Bear trailer home, on the night of June 16, 2012, and the early morning hours of June 17, 2012. J.D.P. similarly testified that the two of them were together at the Kills The Enemy home that night and early the next morning. However, the harmony between the testimony of J.D.P. and that of A.J.M.M. ends at this point.

A.J.M.M. testified that J.D.P. asked if A.J.M.M. wanted to help him destroy the fire-damaged trailer home. When A.J.M.M. hesitated, J.D.P. reportedly called A.J.M.M. a "puss," so A.J.M.M. agreed that he would watch J.D.P. set the fire. According to A.J.M.M., J.D.P. got a child's t-shirt and used a lighter to set one sleeve on fire on the porch of the Kills The Enemy home. A.J.M.M. testified that J.D.P. then walked the short distance to the trailer home, holding the opposite sleeve of the shirt, as the shirt flamed. A.J.M.M. testified that J.D.P. deposited the flaming shirt on a window sill that had prior fire damage, then grabbed a nearby log, and placed the log on top of the burning t-shirt. A.J.M.M. testified that he stood back from the trailer home to watch J.D.P. and could see smoke emanating from the window in the moonlight. According to A.J.M.M., J.D.P. chuckled after setting the fire. J.D.P. and A.J.M.M. then walked on back roads and paths from South Antelope to the home of A.J.M.M.'s sister in Mission, where A.J.M.M. provided J.D.P. with clean clothes and laundered the cloths J.D.P. was wearing because they smelled of smoke. Later the next day, the two of them returned to the Kills The Enemy home.

By contrast, J.D.P. blames A.J.M.M. for the second fire on June 17, 2012, and disavows any involvement in the second fire. J.D.P. testified that he was not drinking during the night of June 16 or the morning of June 17, 2012, but was playing video games when A.J.M.M. arrived at the Kills The Enemy home. According to J.D.P., A.J.M.M. watched J.D.P. play video games, went out of the Kills The Enemy home at one point, and then returned. J.D.P. testified that A.J.M.M. then invited J.D.P. to travel with him to Valentine, Nebraska. J.D.P. walked out of the Kills The Enemy home and saw a fire that had started in the same window as the June 8 fire and was "a little surprised" that there was a fire going. J.D.P. testified that he did not know how A.J.M.M. started the fire. J.D.P. accompanied A.J.M.M. to a store where they met one of A.J.M.M.'s friends who had a car, and then they traveled to Valentine to stay with A.J.M.M.'s mother for four or five days.

The Court did not find J.D.P. to be credible and doubts the truthfulness of his testimony about the June 17 fire. The Court credits A.J.M.M.'s testimony more than that of J.D.P. J.D.P. is about three years older and more physically mature. As between the two juveniles, J.D.P. was the one with the motive to burn the Small Bear trailer home and more likely to lead A.J.M.M. given what the Court could discern of their personalities and relationship. However, A.J.M.M. has credibility issues as well. A.J.M.M. was involved with, and has admitted a juvenile information charging a third degree burglary relating to a theft at a business called Ralph's Body Shop with other juveniles. The Court adjudicated A.J.M.M. a juvenile delinquent and has imposed disposition in his case.

A.J.M.M., despite being told by J.D.P. not to talk about the fires, divulged to Natalie Bordeaux that J.D.P. had been involved in burning the trailer. Thereafter, when interviewed by a special agent for the Rosebud Sioux Tribe tribal police, A.J.M.M. initially denied involvement in the fires, but midway through the interview acknowledged his presence at the second fire and his knowledge of J.D.P.'s admission to setting the first fire.

## II. Conclusions of Law and Mixed Findings of Fact and Conclusions of Law

■■■ The Government's burden of proof in a juvenile case, as in a criminal case against an adult, is to prove all elements of the offense beyond a reasonable doubt. *In re Winship,* 397 U.S. 358, 366–67, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *United States v. W.T.T.,* 800 F.2d 780, 781 (8th Cir.1986). A reasonable doubt is a doubt based upon reason and common sense, and not the mere possibility of innocence. *United States v. Knight,* 547 F.2d 75, 77 (8th Cir.1976). A reasonable doubt is the kind of doubt that would make a reasonable person hesitate to act. *United States v. McCraney,* 612 F.3d 1057, 1062–63 (8th Cir.2010). Proof beyond a reasonable doubt, therefore, must be proof of such a convincing character that a reasonable person would not hesitate to rely an act upon it. *United States v. Rosso,* 179 F.3d 1102, 1104 (8th Cir.1999). However, proof beyond a reasonable doubt does not mean proof beyond all possible doubt. *See McCraney,* 612 F.3d at 1062–63.

On Count I of the Juvenile Information, the Government has the burden of proving beyond a reasonable doubt the following: (1) that on or about the 8th day of June, 2012, J.D.P. set fire to or burned a dwelling (or structure for a lesser-included offense); (2) that J.D.P. acted willfully, meaning J.D.P. engaged in a conscious, intentional act done knowingly and according to a purpose; (3) that J.D.P. acted maliciously, meaning that J.D.P. engaged in an act done with a willful disregard of the likelihood that the building would be burned or set on fire; (4) that J.D.P. is an Indian; and (5) that the offense took place in Indian country. 18 U.S.C. §§ 81, 1153, 5032; Doc. 1.

To support a conviction on Count II, the Government has the burden of proving beyond a reasonable doubt the following elements: (1) that on or about the 17th day of June, 2012, J.D.P. set fire to or burned a dwelling (or structure for a lesser-included offense); (2) that J.D.P. acted willfully, meaning J.D.P. engaged in a conscience, intentional act done knowingly and according to a purpose; (3) that J.D.P. acted maliciously, meaning that J.D.P. engaged in an act done with a willful disregard of the likelihood that the building would be burned or set on fire; (4) that J.D.P. is an Indian; and (5) that the offense took place in Indian country. 18 U.S.C. §§ 81, 1153, 5032; Doc. 1.

■■■ J.D.P. may be found guilty of arson even if he did not do every act constituting the offense charged, as long as he aided and abetted the commission of arson. *United States v. Santana,* 524 F.3d 851, 854 (8th Cir.2008). J.D.P. may be convicted of aiding and abetting, even though he was not charged in that capacity, because aiding and abetting is an alternative charge in every count, whether implicit or explicit. *United States v. McKnight,* 799 F.2d 443, 445 (8th Cir. 1986); *United States v. Clark,* 980 F.2d 1143, 1146 (8th Cir.1992). "To be guilty of aiding and abetting is to be guilty as if one were a principal of the underlying offense." *United States v. Roan Eagle,* 867 F.2d 436, 445 (8th Cir.1989). In order to have aided and abetted the commission of arson, the Government must prove that J.D.P., either before or at the time of the

crime, knew that arson was being committed or going to be committed; must have associated with the arson; must have acted knowingly in some way for the purpose of causing, encouraging, or aiding in the commission of arson; and must have engaged in a willful and malicious act. *Clark,* 980 F.2d at 1146 ("To convict under the aiding and abetting statute, 18 U.S.C. § 2, the government need only prove that the defendant associated himself with the unlawful venture, participated in it as something he wished to bring about, and by his action sought to make the activity succeed."). Merely being present at the scene of the arson or merely acting in the same way or associating with another is not proof that J.D.P. has become an aider and abetter. *See United States v. Hill,* 464 F.2d 1287, 1289 (8th Cir.1972) (holding that defendant's presence during discussions concerning future criminal activity, some evidence of acquiescence in discussions, and some evidence that defendant possessed instrumentalities of the crime is not sufficient to convict as an aider and abetter). The aider and abetter must share the principal's criminal intent. *Santana,* 524 F.3d at 854. If J.D.P. had no knowledge that a crime was being committed or about to be committed, but happened to act in a way which advanced some offense, he does not thereby become an aider or abetter because he lacks the requisite intent. *Roan Eagle,* 867 F.2d at 444–45.

 The Court did not find J.D.P. to be credible when he testified. In evaluating a witness, the Court considers "the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence you believe." *United States v. Moore,* 978 F.2d 1029, 1032 (8th Cir.1992).

J.D.P. was involved in the setting of the first fire on June 8 at the Small Bear trailer home. The Court believes J.D.P. when he says he was intoxicated, went to the trailer home in the early morning hours of June 8, tried to kick in the padlocked door several times, and peeked in a window on the back side of the trailer home. J.D.P. did not like the Small Bear trailer home in his turf because members of the Small Bear family were affiliated with the rival Surenos 13 gang. At a minimum, J.D.P. was involved in intentionally setting fire to the Small Bear Trailer home on June 8.

 The Juvenile Information charges that J.D.P. committed arson under 18 U.S.C. § 81 of "the residence and dwelling of Colleen Small Bear, a trailer home." Doc. 1. The offense of arson within the territorial jurisdiction of the United States as set forth in 18 U.S.C. § 81 distinguishes between two types of arson. *See* 18 U.S.C. § 81. If "the building be a dwelling or if the life of any person be placed in jeopardy," the maximum penalty is life in prison; if the arson is to any other "building, structure or vessel ...," the penalty is a maximum of 25 years in prison. 18 U.S.C. § 81. The Government has the burden of proof beyond a reasonable doubt that the trailer home was a "residence and dwelling" as alleged in Counts I and II of the Juvenile Information. *United States v. Christy,* 647 F.3d 768, 771 (8th Cir.2011) (noting that the government bears the burden of proving each element of the crime beyond a reasonable doubt).

Section 81 does not define what constitutes a "dwelling." The United States Court of Appeals for the Eighth Circuit has resorted to Black's Law Dictionary to define the word "dwelling" as a "building

or portion thereof, a tent, a mobile home, a vehicle or other enclosed space which is used or intended for use as a human habitation, home or residence." *United States v. Graham,* 982 F.2d 315, 316 (8th Cir. 1992) (quoting *Black's Law Dictionary* 505 (6th ed. 1990)). Other circuit courts of appeals generally have understood a "dwelling" to mean a structure that is used as a residence. *See United States v. Romero–Bustamente,* 337 F.3d 1104, 1109 (9th Cir.2003) ("The common legal meaning of dwelling, as reflected in numerous sources, includes at least two elements: that it be a *structure,* and that it be used as a *residence.*"); *United States v. McClenton,* 53 F.3d 584, 587 (3rd Cir.1995) (resorting to use of Black's Law Dictionary and noting a dwelling is a building "used or intended for human habitation, home or residence). Statutes and regulations of the United States, albeit unrelated to the arson statute, have a common theme of a dwelling meaning a building designed primarily for use as a home or one in which someone resides. *See* 15 U.S.C. § 1602(w) (Truth In Lending Act); 42 U.S.C. § 3602(b) (Fair Housing Act); 12 C.F.R. § 202.13(a)(2) (Equal Credit Opportunity Act Regulation); 38 C.F.R. § 36.4501 (Regulation relating to loans to Native American veterans); *see also Romero–Bustamente,* 337 F.3d at 1109 (outlining where and how "dwelling" is defined in federal statutes).

 A residential structure may lose its characteristic as a "dwelling" when there has been a prolonged vacancy. For instance, in *United States v. Jackson,* 22 F.3d 583 (5th Cir.1994), the court concluded that no burglary of a "dwelling" had occurred because the structure had been vacant for seven years. *Id.* at 585. The court in *Jackson* reasoned "[l]ogically, whether by vacancy, physical deterioration, altered use, or otherwise, a point in time exists at which a dwelling loses its character as a residence and becomes a 'mere' building." *Id.* However, a mere break in occupancy of the dwelling does not thereby change its characteristic. For example, in *United States v. Smith,* 354 F.3d 390 (5th Cir.2003), the court concluded that a motel that operated on a seasonal basis remained a "dwelling" during its three-month seasonal vacancy. *Id.* at 397–398. The court in *Smith* reasoned that "[w]hatever the single 'point in time' at which a building's core nature is altered, it was not reached in just three months, particularly in light of the fact that the motel would again be occupied by visitors in the near future." *Id.* at 398. And in *Graham,* 982 F.2d 315, the Eighth Circuit held that a structure used for "weekend fishing retreats" constituted a dwelling. *Id.* at 316. Unlike the motel in *Smith* or the weekend fishing cabin in *Graham,* this trailer home had been boarded up and padlocked and a date of any future residence within the trailer home was uncertain and hinged on when Sonja Farmer or Colleen Small Bear would have money to repair the leaking roof and electrical issues.

Because being a "dwelling" is an element of the offenses charged in the Juvenile Information, the Court must apply the "beyond a reasonable doubt" standard of proof. The Court's determination might be different under a different standard of proof. The Small Bear trailer home on June 8 had boarded up windows and a front door padlocked from the exterior. No one had stayed overnight in the trailer home for the previous approximately three months. Although there were intentions to repair the home, the trailer home had electrical and other problems that prompted Sonja Farmer to leave the trailer home. The trailer home was being used for storage rather than a residence at the time of the fires. No estimates for repairs or plans for repairs had been made, and Colleen Small Bear and Sonja Farmer were planning on repairs only when they had

the money to do so; similar plans existed for the repair of the two vehicles on the site that had sat idle for about three years. The Government did not meet its burden of proof beyond a reasonable doubt to show that the trailer home was a "dwelling" on June 8, 2012.

A vacant or abandoned home, however, is a "structure." *United States v. Big Leggins,* 317 Fed.Appx. 652, 654 (9th Cir. 2009). Indeed, a home that has been partially damaged by fire remains a "structure." *Id.* Although the Government has failed to prove that the trailer home was a "dwelling," the trailer home unquestionably was a "structure," even after the first fire.

 A lesser included offense is one where the lesser-offense elements are identical to part of the greater-offense elements, there is some evidence that would justify conviction of the lesser offense, and there is evidence such that the finder of fact may find the defendant innocent of the greater and guilty of the lesser-included offense. *United States v. Crawford,* 413 F.3d 873, 876 (8th Cir.2005). Arson of a "structure" is a lesser-included offense of the offense charged in the Juvenile Information—arson of a "dwelling."

The Government has proven beyond a reasonable doubt that J.D.P. is guilty of a lesser-included offense to Count I by proving each element of aiding and abetting in the arson of a "structure," the Small Bear trailer home, on June 8, 2012. J.D.P. is a juvenile delinquent because he committed a lesser-included offense to the offense charged under Count I of the Juvenile Information.

 The Government has failed to prove beyond a reasonable doubt that J.D.P. is guilty of Count II of the Juvenile Information. The Court does not believe J.D.P.'s testimony and credits the testimony of A.J.M.M. As a result, it is certainly possible, indeed probable, and even quite likely that J.D.P. was involved in setting or aiding and abetting in the second fire on June 17, 2012. However, the standard of proof here is beyond a reasonable doubt. As to Count II, the Government has not proven beyond a reasonable doubt that J.D.P. started or aided and abetted in the start of the fire on June 17, 2012.

 The Court has considered whether J.D.P. could be found guilty of misprison of a felony relating to the June 17 fire based on his testimony. Misprison of a felony typically is not a lesser-included offense of a felony. *United States v. Gebbie,* 294 F.3d 540, 544 (3rd Cir.2002); *United States v. Vasquez–Chan,* 978 F.2d 546, 554–55 (9th Cir.1992). The offense of misprison of a felony has additional elements of failure to notify authorities of the offense and some affirmative step to conceal the crime. These additional elements render misprison of a felony something other than a lesser-included offense; that is, misprison of a felony is not a "subset" of the offense of arson. *See Vasquez–Chan,* 978 F.2d at 554–55. Thus, even though J.D.P. knew of the second fire and probably was involved in its origination, the Court cannot find J.D.P. guilty of misprison of a felony relating to the June 17 fire because that offense is not a lesser-included offense to Count II of the Juvenile Information.

### III. Conclusion

For the reasons explained herein, it is hereby

ORDERED, ADJUDGED AND DECREED that J.D.P. is adjudicated a juvenile delinquent based on the commission of a lesser-included offense to Count I of the Juvenile Information, but is acquitted on Count II of the Juvenile Information.